(70 App. Div. 538.)

OSWEGO CITY SAV. BANK v. BOARD OF EDUCATION OF UNION FREE SCHOOL DIST. NO. 2.

(Supreme Court, Appellate Division, Fourth Department. March 25, 1902.)

SUBSTITUTED BONDS—LIABILITY THEREON.

Where a school district issues typewritten bonds, and thereafter, to enable the holder to negotiate them, printed ones of the same tenor are executed by its president and treasurer, the originals being mutilated and surrendered, it is liable on the substituted bonds.

Appeal from trial term, Herkimer county.

Action by the Oswego City Savings Bank against the board of education of Union Free School District No. 2, towns of Manheim and Oppenheim, counties of Herkimer and Fulton. From judgment for plaintiff (72 N. Y. Supp. 15), defendant appeals. Affirmed.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

Charles W. Ward and A. M. Mills, for appellant.
Elisha B. Powell, for respondent.

WILLIAMS, J. The judgment should be affirmed, with costs. The action was brought to recover the amount of a bond for $1,000, and coupon upon such bond, and coupons upon 14 other bonds of $1,000 each, the whole 15 bonds being of one and the same issue. There is little or no dispute as to the facts. The questions involved are mostly questions of law. In 1895 the defendant and the Dolgeville School Society were two domestic corporations, located at Dolgeville, N. Y. The school society owned a school site and property at Dolgeville, and the defendant desired to purchase the same. The transfer was agreed upon at $18,000. Proper legal proceedings were had on the part of both corporations to carry out their agreement. The school society was authorized to sell and convey the property, and the defendant to purchase the same, and take title thereto, and to issue and negotiate bonds to raise the $18,000 to pay the purchase price. Alfred Dolge was president, and Nathan A. Snell was treasurer, of the defendant, and continued such until the year 1897. On the 5th day of August, 1895, 18 bonds, of $1,000 each, were duly issued by defendant, having been signed by Dolge, its president, and Snell, its treasurer, and sealed under the direction of the defendant. These bonds were sold at public auction, August 6, 1895, as required by law, and were bid in at par by one Armstrong, representing the school society. August 7, 1895, Armstrong borrowed money from the bank, and paid the defendant in cash for the bonds, and the defendant thereupon paid the school society the $18,000 for the site and property, and took a conveyance thereof. The school society gave the $18,000 in cash to the bank, in payment of the money borrowed to pay for the bonds. Defendant at once took possession of the property, and has ever since retained the same. The bonds were placed in the custody of the said Armstrong, to be kept for the school society, and were so kept by him until June 25, 1896, when Dolge, who was still president of the defendant, and was also a member of the executive committee

of the school society, went to bond brokers in New York City and offered for sale 17 of the bonds, numbered 2–18, both inclusive, representing himself to be the owner thereof. All the bonds were typewritten, and Dolge had with him at the time bond No. 18. A certified copy of the proceedings by the defendant authorizing the issue of the bonds was delivered to the brokers. They expressed a willingness to purchase the 17 bonds, but told Dolge that they could not use typewritten ones, and it would be necessary to have them printed or lithographed, as was usual for such bonds. Dolge agreed to have them put in print, and left the bond No. 18 with the brokers, who procured the printing to be done. The next day, June 26, 1896, Dolge sent to the brokers the remaining 16 typewritten bonds. The next day, June 27, 1896, the brokers sent to Dolge the printed forms of the 17 bonds of precisely the same language of the typewritten ones. The printed bonds were executed by Dolge, as president, and Snell, as treasurer, the same as the typewritten ones had been executed, the same seal being used. On June 30, 1896, Dolge took the printed bonds so executed to New York, and delivered them to the brokers, and the typewritten bonds were at the same time canceled by cutting and mutilating the same with a knife, and delivered to Dolge, who carried the same away, and thereafter retained them, he being the president of the defendant. The brokers, at the same time, paid Dolge for the bonds. No claim against the defendant upon the 17 typewritten bonds has ever since been made by any one. They have never been transferred to any one. Some time afterwards, but before the maturity of any of the 17 printed bonds, the same were in the regular course of business sold and delivered to the plaintiff. The certified copy of the proceedings authorizing the issue of the bonds was at the same time delivered to plaintiff. The plaintiff relied thereon, and was a bona fide purchaser for value of the bonds. Bond No. 2, and the first coupon upon each of the other 16 bonds, became due and payable October 1, 1897, and were presented to and paid by the defendant, and were canceled and delivered to the defendant. Bond No. 3, and the second coupon on each of the remaining 15 bonds, became due and payable October 1, 1898, and were presented to and paid by the defendant, and were canceled and delivered to the defendant. Bond No. 4, and the third coupon upon each of the remaining 14 bonds, became due and payable October 1, 1899, and were presented to defendant, and payment thereof demanded and refused. This was the first time any question was raised as to the validity of the printed bonds.

This action was commenced January 10, 1900, to recover the amount of this bond and the coupons, payment of which was refused October 1, 1899. The complaint alleged the execution of the bonds at the date thereof, and the transfer thereof to the brokers and to the plaintiff, and no allegation was made as to the surrender or cancellation of the typewritten bonds and the issue and substitution of the printed bonds for the typewritten ones, and the transfer of the printed bonds to the brokers and to the plaintiff. The answer was a general denial, except as to the incorporation of the defendant. The transaction between Dolge and the New York brokers in changing the 17

bonds amounted to a mere substitution of the printed form for the typewritten form of the bonds. There was no new issue of bonds, and the liability of the defendant was in no .manner changed or increased. The typewritten bonds were not in shape to be used on the market. The printed ones were. No one was injured or affected in any way by the change. The defendant certainly was not, nor was the school society. The printed bonds were just as good and valuable as the typewritten bonds, and were more marketable. The typewritten bonds were canceled and delivered up to the president of the defendant, who never parted with them until this litigation arose, and then the whole transaction as to the substitution of the printed bonds therefor was known, and typewritten bonds were of no validity, and could not be enforced against the defendant while the printed bonds were outstanding.

The question as to any misappropriation of the bonds by Dolge was just the same as to the printed as it was to the typewritten bonds. If, as claimed, Dolge has no authority from the school society to dispose of the bonds, and misappropriated the same," then the injury to the school society arose out of the disposition of the bonds to the New York brokers, and not out of the substitution of the printed for the typewritten ones. Such misappropriation could not be insisted upon as a defense against the plaintiff, however, because it was a bona fide holder thereof for value. Insurance Co. v. Hachfield, 73 N. Y. 226.

The question of the substitution of bonds was passed upon in two cases between the Williamsburg Savings Bank and the town of Solon, reported in 114 N. Y. 122, 21 N. E. 168, and 136 N. Y. 465, 32 N. E. 1058. The transaction there involved was a surrender and cancellation of the bonds originally issued, and the delivery in place thereof of other bonds of different denomination, and payable at a different place. The court, however, held that the substituted bonds in no manner increased the liability of the town, and refused to invalidate them. The town was held liable thereon. The questions there passed upon are applicable to this case, and are authority for holding the defendant liable upon the bonds here in litigation. The first action as to the town of Solon bonds was in equity to declare the substituted bonds invalid. The court refused the relief asked for. The second action was at law to recover the amount of the bonds, and the court held a recovery could be had.

Here there has been no action in equity. The first action brought is one at law, to recover upon the written bonds. It can hardly be said that two actions were necessary when the parties are before the court, and the relief can as well be afforded in one action as in two actions between the same parties. All the facts are before the court, and the question of liability can be determined in this action, whatever its technical form may be. No equitable relief is called for. We need only determine that upon the conceded facts the defendant is liable upon the bonds and the plaintiff is. entitled to recover the amount thereof.

It is not suggested that the defendant was in any way prejudiced by allowing all the facts to be proved under the pleadings as they

were. It is not claimed that any other facts would have been shown if the plaintiff had alleged the same more fully in its complaint as originally served, or if it had amended its complaint upon the trial so as to present the whole facts as they appeared.

Our conclusion, therefore, is that the trial court properly decided that the plaintiff could recover upon the printed bonds if, in the absence of such substitution, it could have recovered upon the typewritten ones. The court properly allowed interest upon the $1,000 of principal upon the bond from the time payment thereof was demanded and refused. O'Brien v. Young, 95 N. Y. 429, 47 Am. Rep. 64. The rate of interest before the time fixed for the payment of the principal was governed by the contract itself, but after demand and refusal interest was allowed as damages for breach of the contract, and the rate was not controlled by the contract, but was that fixed by the statute.

The views herein expressed lead to an affirmance of the judgment appealed from, with costs. All concur.