The Prudence Company, Inc., Plaintiff, v. Central Hanover Bank and Trust Company of New York, Trustee under a Trust Indenture between The Prudence Company, Inc., and Central Union Trust Company of New York, Dated May 1, 1926, and Samuel W. Gumpertz, a Holder of a Bond of the Prudence Company, Inc., Issued under Said Trust Indenture, Defendants.

First Department, February 15, 1933.

*Alexander B. Siegel* of counsel [*Alfred T. Davison* with him on the brief; *Van Vorst, Siegel & Smith*, attorneys], for the plaintiff.

*Albert Stickney* of counsel [*Henry E. Kelley* and *Vincent Keane* with him on the brief; *Larkin, Rathbone & Perry*, attorneys], for the defendant Central Hanover Bank and Trust Company.

*Cornelius Furgueson, Jr.*, for the defendant Samuel W. Gumpertz.

MARTIN, J. We are called upon to determine whether, upon the statement of facts submitted herein, the plaintiff is entitled to judgment requiring the defendant Central Hanover Bank and Trust Company of New York, as trustee, to pay the sum of $889,551.96 in cash, out of certain pledged property, or whether the defendants, the trustee and a representative of the bondholders, are entitled to a judgment in their favor.

The trust indenture provides for the issuing by plaintiff, The Prudence Company, Inc., of guaranteed collateral trust five and one-half per cent gold bonds in denominations of $500, $1,000 or any multiple of $1,000 in an aggregate principal amount of not exceeding $15,000,000, due and payable on May 1, 1961. The bonds are guaranteed as to principal, sinking fund and interest by Realty Associates. They are also collaterally secured by bonds, mortgages, cash and securities assigned or delivered from time to time by The Prudence Company, Inc., to the trustee, the collateral being designated the pledged property. Bonds amounting to $13,800,000 are still outstanding.

There has been no default by plaintiff, it having paid or caused to be paid the interest on bonds and complied with the sinking fund requirements.

The trust indenture contemplates that plaintiff may substitute security or withdraw collateral in excess of the amount required to be kept with the trustee. Plaintiff is a company which loans

money secured by mortgages. As it reinvests funds, its business requires it to secure other capital for further issues of bonds, and it asserts it must carry on its business if its obligations under the trust indenture are to be fulfilled. With this in view, the trust indenture was undoubtedly drawn, one of the purposes being to allow plaintiff to make withdrawals of cash from the "pledged property," provided the amount of security required be kept with the trustee.

Under the indenture, no real estate mortgage is acceptable by the trustee if the amount of principal thereof is more than seventy-five per cent of the appraised value of the realty mortgaged, appraisals to be as of the time of the deposit with the trustee. It is also provided that no mortgage of real estate is to be accepted as collateral for more than eighty-three and one-third per cent of its principal sum. On these terms, real estate mortgages and interests in such mortgages were accepted by the trustee at a total value fixed as of the time of deposit of some $8,000,000 to $10,000,000.

The pertinent sections of the trust agreement are as follows:

Article 3, section 2, which deals with the valuation of collateral, provides in part as follows: "All of the Pledged Property hereinabove described shall, for the purpose of determining the amount of bonds to be delivered from time to time by the Trustee as hereinafter provided, and for the purpose of determining the right of the Company to withdrawals and substitutions as hereinafter provided, be valued at the market value thereof as of the time when such determination is, or is required to be made, except that the securities mentioned in subdivisions A, D, E and F above set forth shall, for such purpose, be valued at eighty-three and one-third percentum (83 1/3%) of the face amount of the principal thereof due and unpaid, and the face value or amount of all building loan bonds and mortgages shall be deemed to be increased over the amount previously advanced thereon by the face amount of all advances as and when thereafter made thereon. If any part of the principal of any such bond and mortgage is paid, the face value of such bond and mortgage shall be deemed to be reduced by the amount of such payment so made on account of the principal thereof."

Article 3, section 3, which relates to pledged property to be deposited with the trustee, provides as follows: "The value (determined as hereinabove provided in Article Three hereof) of the Pledged Property shall at all times be equal to the face amount of the principal of all Bonds then issued and outstanding hereunder, and the Company shall from time to time make such additions to the Pledged Property so that the value (determined as herein-

above provided in Article Three hereof) of the Pledged Property shall not at any time be less than the face amount of the Bonds issued and outstanding hereunder."

Article 9, subdivision (g), which relates to the maintenance of collateral, provides in part as follows: " The Company will at all times keep and maintain the Pledged Property under the terms of this Trust Indenture in accordance with the requirements hereinbefore specified which shall have a total aggregate value (determined as in Article Three hereof) which shall not at any time be less than the face amount of the principal of all bonds then issued and outstanding hereunder. * * * If at any time the value of such Pledged Property (determined as in Article Three hereof) shall be less than the face amount of the principal of all bonds then issued and outstanding hereunder, the Company will forthwith deposit additional Pledged Property to the extent required by the terms of this Trust Indenture."

Article 9, subdivision (j), provides: " The Company will also do, execute, acknowledge and deliver, or cause to be done, executed, acknowledged and delivered, all and every such further acts, deeds, transfers and assurances for the better assuring, conveying and confirming unto the Trustee all and singular the Pledged Property as the Trustee shall reasonably require for better accomplishing the provisions and purposes of this Trust Indenture and for better securing the payment of the principal and interest of the Bonds."

The classifications of collateral are: (a) Real estate mortgages; (b) cash; (c) securities issued by the United States, the State or city of New York, bank certificates of deposit and acceptances of a stated kind, and secured notes approved by the trustee; (d) issues of State and municipalities, outside of New York State, and of Federal land banks approved by the trustee; (e) bonds of Prudence Bonds Corporation, guaranteed by plaintiff, and (f) legal investments for New York trustees, other than those included in classification (c).

It is stipulated that the market value of the mortgaged real estate has declined since the time the mortgages were deposited to such a point that the unpaid principal sum of each mortgage is more than seventy-five per cent of the present market value of the mortgaged real estate. Impairment is admitted, but to what extent has not been determined for the reason that the plaintiff contends that in figuring the amount of collateral on hand, value is to be determined as of the time of deposit, and claims the right to make withdrawals of cash from the pledged property no matter how much depreciation has occurred in the value of the real estate securing mortgages.

According to the trustee, plaintiff's position requires a determination that, with respect to groups A, D, E and F, collateral be valued at eighty-three and one-third per cent of its face value, even though it may have become valueless subsequent to deposit. We should hesitate to arrive at such determination inasmuch as United States bonds and bank acceptances must be taken at the market value whenever requests are made for substitution or withdrawals of collateral.

It is also contended by the trustee that plaintiff's interpretation, though leaving plaintiff free to take advantage of rising realty values, would permit it to ignore the most severe declines; that plaintiff claims the right, when making withdrawals, to have the deposited mortgages regarded as worth eighty-three and one-third per cent of the unpaid principal, even though actually worthless; that, for example, a long term $1,000 bond of a defaulting out-of-State municipality is to be counted as good collateral to the amount of $833.33 until 1961, though it has lost all value.

The trustee insists upon the application of the principle that, with respect to securities sold to the public at large, there should be the utmost good faith toward prospective purchasers; that in selling its bonds, it is natural to suppose plaintiff represented the collateral trust agreement to be such as to protect the holders under any and all circumstances, and that investors to whom the bonds were sold could not reasonably have anticipated that the plaintiff would contend that it had the right to withdraw cash from the deposit in trust regardless of the present condition as to adequacy of the security. We find the pledgor, although admitting depreciation in mortgage security values, insisting on an unconditional right to withdraw cash.

The plaintiff relies particularly on article 9, subdivision (g), which provides that no mortgage in default for over a year, as to interest, taxes or assessments, shall constitute part of the pledged property, and according to its counsel, the effect of the trust indenture is to require that all mortgages, other than those in default, shall be valued as of the time of deposit for the purpose of determining whether the amount of collateral permits withdrawals.

It is also argued for plaintiff that it is never feasible to ascertain the value of a mortgage on real estate; that it would not be practical to require such collateral to be reckoned at other than an agreed percentage of its face value, and that the trustee would have the court dealing in uncertainties. However, it is a fact that valuations of properties and rights of all descriptions are constantly being made in connection with tax proceedings of various kinds, so that this argument for plaintiff is not convincing.

The plaintiff also refers to provisions of the trust indenture that interest on cash held in the collateral trust fund is to be paid at certain official rates which would at the present time produce practically no return, though the trustee may itself use the cash on paying such interest.

The effect which may result from allowing or disallowing withdrawals is to be considered as being in point only so far as it may indicate the purpose of the parties, and much of what is said for plaintiff begs the question. The meaning of the instrument is to be ascertained by uncovering its intent. It formulated a plan to provide for carrying out its purpose. The intention was at all times to safeguard and protect the bondholders. That is what was represented to the public. That was the purpose for the pledged property. The parties did not intend by any expressions used to enable plaintiff to frustrate the fulfillment of the plan. What they wanted to accomplish is indicated by the agreement as a whole. The intention that the payment of the bonds was to be secured by collateral deposited in trust is found throughout the instrument and even in the name given to the bonds: " *Guaranteed Collateral Trust 5 1/2% Gold Bond.*" They are represented as secured not only by the guaranty of Realty Associates but by collateral held in trust, the purpose of which is payment of the bonds. That is the meaning of the indenture disclosed by what the parties intended to effectuate; that is what was represented to the public.

The bank is not a mere depositary. It is a trustee. Its duty is to make certain, so far as possible, that the trust shall attain its end. In the absence of unequivocal stipulation to the contrary, no provision of the trust agreement shall be so read as to defeat its purpose; and there is nothing clearly indicating that collateral may be withdrawn while the trust fund is less than the amount of unpaid bonds. The agreement must be considered in its entirety, having in mind its purpose to assure payment of the bonds when due by keeping sufficient funds with the trustee to accomplish that end.

The present value of the collateral has not been stated in the submission, inasmuch as it is plaintiff's contention that its present value is immaterial under the agreement.

Having provided that mortgages made by plaintiff or subsidiaries or controlled companies are not to be accepted as collateral and that no mortgage is to be accepted for more than seventy-five per cent of the value of the mortgaged property, or for more than eighty-three and one-third per cent of its principal sum, it is inconceivable that the parties intended mortgages should be continued to be

regarded at fictitious values for the purpose of justifying the withdrawal by plaintiff of prime security.

It is reasonable to suppose that the parties considered classifications B and C to embrace the most dependable collateral, inasmuch as such classifications embrace nothing but cash and securities issued by the United States or by the State or city of New York, bank certificates and acceptances and certain secured short term notes approved by the trustee. Nevertheless, in valuing the pledged property "for the purpose of determining the right of the Company to withdrawals and substitutions," collateral of the kind just mentioned is to be "valued at the market value thereof as of the time when such determination is, or is required to be made," whereas, according to plaintiff, real estate mortgages held by the trustee on a declining market are intended to be figured at the time of withdrawal at eighty-three and one-third per cent of face value regardless of present worth. Plaintiff would have the less drastic requirements applying to the less dependable collateral. This contention would cast doubt upon what was intended when the contract was made if mortgages on real estate should cease to afford security conformable to the primary purpose of the agreement. Under such circumstances, the court should read the indenture so as to accomplish the end for which it was made, namely, adequate security for the payment of the bonds.

Accordingly, the first question of the submission is answered in the negative; the second question is answered in the affirmative, and the third question is answered in the negative.

The defendants, therefore, are entitled to judgment, without costs.

FINCH, P. J., MERRELL and O'MALLEY, JJ., concur.

Judgment directed for the defendants, without costs. Settle order on notice.