THE PRUDENCE COMPANY, INC., Appellant, *v.* CENTRAL HANOVER BANK AND TRUST COMPANY OF NEW YORK, as Trustee, et al., Respondents.

(Argued March 14, 1933; decided April 11, 1933.)

*Nathan L. Miller* for appellant. Article 3 of the trust indenture provides in unequivocal terms that the value of mortgage securities constituting part of the pledged property shall, for the purpose of determining the plaintiff's right to make withdrawals, be eighty-three and one-third per cent of the face amount of the principal thereof due and unpaid. (*Nathan v. Equitable Trust Co.*, 250 N. Y. 250.) Where the words of an agreement are clear, consistent and unambiguous, there is no room for construction to give to them a meaning other than that which they plainly bear. (*Matter of Loew's Buffalo Theatres, Inc.*, 233 N. Y. 495; *Schoonmaker v. Hoyt*, 148 N. Y. 425; *Cream of Wheat Co. v. Crist Co.*, 222 N. Y. 487; *Gans v. Ætna Life Ins. Co.*, 214 N. Y. 326; *Houlihan v. Preferred Accident Ins. Co.*, 196 N. Y. 337; *Dwight v. Germania Life Ins. Co.*, 103 N. Y. 341.)

*Albert Stickney* and *Hersey Egginton* for Central Hanover Bank and Trust Company, respondent. The court should so construe the indenture as to effectuate its expressed purpose, which is to secure payment of the bonds. Impairment of some of the pledged collateral being admitted by the stipulation, a reappraisement of the mortgages now held in trust is required, in order to determine the market value of all the pledged collateral and its sufficiency to secure full payment of the bonds. Such reappraisement is a condition precedent to any exercise of the claimed right of withdrawal. (*Booth v. Cleveland Rolling Mill Co.*, 74 N. Y. 15; *Simon v. Etgen*, 213 N. Y. 598; *Wells v. Alexandre*, 130 N. Y. 642; *Jones*

v. *Kent*, 80 N. Y. 585; *New England Iron Co.* v. *Gilbert El. Co.*, 91 N. Y. 153; *People ex rel. N. Y. C. & H. R. R. Co.* v. *Walsh*, 211 N. Y. 90.)

*Cornelius Furgueson, Jr.*, for Samuel W. Gumpertz, respondent.

KELLOGG, J. The plaintiff, The Prudence Company, Inc., on May 1, 1926, executed and delivered a trust indenture to the Central Union Trust Company of New York, now the defendant Central Hanover Bank and Trust Company of New York, as trustee. The indenture prescribed the terms upon which bonds of the Prudence Company, in an aggregate principal sum not exceeding $15,000,000, might be issued. It made provision for the transfer by the Prudence Company to the trustee of divers securities to secure the payment of the bonds to be issued. Pursuant to the terms of the indenture, bonds of the Prudence Company, aggregating a total principal sum of $13,800,000, were issued and are now outstanding. The trustee now holds in trust, under the terms of the indenture, moneys, received from cash payments made upon the securities transferred or otherwise, amounting to the aggregate sum of $5,343,810.57. It likewise holds in trust divers bonds and mortgages, the aggregate principal of which is such, that, at an appraisal of eighty-three and one-third per cent of their face (the measure to be applied as claimed), they have a value, for the purposes of the indenture, of $9,345,741.39. If the measure applied is correct and exclusive, then the trustee holds cash and securities of the value, in the aggregate, of $14,689,551.96, with which to satisfy an indebtedness of $13,800,000, leaving an excess of the former over the latter of $889,551.96. This excess, the Prudence Company claims the right, under the terms of the indenture, to withdraw from the trustee, in the form of cash.

It is stated in article 3 of the trust indenture that "the Pledged Property shall consist of any of the following." There follows a statement of the securities receivable which divides and places them in six separate classes. Class A shall consist of bonds secured by mortgages which are first liens upon real property. Class B shall consist of Cash. Class C shall consist of United States Treasury certificates of indebtedness, bonds of the United States of America, bonds or corporate stock of the city of New York, bonds of the State of New York, certificates of deposit issued by any bank or trust company, bank acceptances made by any bank or trust company, promissory notes secured by bonds and stocks listed on any incorporated exchange. Class D shall consist of bonds of any State of the United States, or any municipality of any such State other than those mentioned in Class C, and bonds issued by any Federal land company, provided the same are approved by the trustee. Class E shall consist of bonds issued by the Prudence-Bonds Corporation (a corporation allied with the plaintiff Prudence Company Inc.), secured by a trust fund consisting of bonds secured by first mortgages and guaranteed by the company. Class F shall consist of securities other than those previously mentioned in which savings banks and trustees of the State of New York are permitted to invest. The securities actually turned over and now held are the bonds and mortgages classified under A, and bonds of the Prudence-Bonds Corporation, classified under E.

The bonds and mortgages constituting securities within Class A shall be acceptable and receivable by the trustee, provided only that they are accompanied by an appraisal of the real estate, made by two appraisers selected by the Prudence Company, which is approved in writing by the trustee. This appraisal must show "that the aggregate unpaid principal sum due on the bonds, notes or evidences of indebtedness secured thereby shall not be more than

seventy-five per cent of such appraised value." The promissory notes coming within Class C may be received and accepted by the trustee, provided only " that the unpaid principal sum due on such notes shall not at any time be in excess of eighty per cent of the market value of the stocks or bonds " which secure them. Otherwise, the indenture, in describing the securities which the trustee may receive and accept, contains no stipulation or condition relating to the value of the securities.

From time to time securities may be withdrawn from the trust fund, and other securities may be substituted. Withdrawals, without substitution, may also be made. These withdrawals, however, are subject to the condition that through them " the value (determined as in Article 3 hereof) of the Pledged Property shall not be less than the face amount of the bonds then issued and outstanding hereunder." The indenture contains this clause: " The value (determined as hereinabove provided in Article 3 hereof) of the Pledged Property shall at all times be equal to the face amount of the principal of all Bonds then issued and outstanding hereunder, and the Company shall from time to time make such additions to the Pledged Property so that the value (determined as hereinabove provided in Article 3 hereof) of the Pledged Property shall not at any time be less than the face amount of the Bonds issued and outstanding hereunder."

Thus it will be seen, that parity must be maintained between the value of the pledged property, as determined by article 3 of the indenture, and the face value of the bonds issued under the indenture, in order that withdrawals may be had, and the pledgor may fulfil its obligation. The eighty-three and one-third per cent provision, quoted in the next paragraph, which the pledgor claims exclusively to apply, is not the only measure of valuation provided for in article 3. There is also the provision, to which we have referred, that, before bonds

and mortgages may be received and accepted by the trustee, an appraisal must establish that the principal sum of the bonds does not exceed seventy-five per cent of the value of the real estate mortgaged. That provision is as much a part of article 3 as is the eighty-three and one-third per cent provision, and, according to the express wording of the indenture, all the methods of valuation provided for in article 3 must be applied, to determine whether parity will be maintained. The conclusion would seem inescapable that the bonds secured by mortgages on real estate, which, for the purpose of acceptance, must disclose a figure of aggregate debt, exceeded by the figure representing the aggregate value of the real estate by twenty-five per cent, must continue to show the same ratio, or the value of the pledged property has been diminished. Surely a bond over-secured by twenty-five per cent of its face, which, through a fall in real estate price, becomes under-secured by twenty-five per cent, has no longer the same value. Nevertheless, the pledgor insists that there has been no depreciation, although the real estate securing the bonds no longer has a value twenty-five per cent in excess of their face, and that parity between the pledges and the debt will be maintained within the meaning of the indenture, notwithstanding the proposed withdrawals, because of the provisions of section 2 of article 3.

The section so relied upon in part reads as follows: "All of the Pledged Property hereinabove described shall, for the purpose of determining the amount of bonds to be delivered from time to time by the Trustee as hereinafter provided, and for the purpose of determining the right of the Company to withdrawals and substitutions as hereinafter provided, be valued at the market value thereof as of the time when such determination is, or is required to be made, except that the securities mentioned in subdivisions A, D, E and F above set forth shall, for such purpose, be valued at eighty-three and one-third

percentum (83 1/3%) of the face amount of the principal thereof due and unpaid."

The argument of the pledgor is that the provisions governing the trustee in respect to receiving and accepting certain securities; namely, that the aggregate principal sum of bonds and mortgages must not be greater than seventy-five per cent of the value of the real estate, do not apply. It reasons that "for the purpose of determining the amount of bonds to be delivered from time to time by the Trustee" and "for the purpose of determining the right of the company to withdrawals," bonds and mortgages must be valued at the arbitrary figure of eighty-three and one-third per cent of the face amount of the principal due and unpaid. It matters not, as it contends, that the depreciation in value of the real estate and the stocks has been such that the bonds and the notes secured thereby may have become well-nigh worthless. On the other hand, the trustee argues that for the purpose of determining the amount of bonds to be issued, and for the purpose of determining the extent to which withdrawals may be permitted, there must first be a revaluation of the real estate so that the indebtedness based thereupon shall not be reckoned at more than seventy-five per cent thereof; that after this amount has been ascertained, then there must be applied the figure of eighty-three and one-third per cent in part to determine whether the pledged property is equal to the par value of the bonds which it is given to secure.

Manifestly the argument of the pledgor, if successful, would produce results quite unjust and unfair to the bondholders. Moreover, it places upon the terms of the indenture an interpretation which, in many respects, is unreasonable. Thus, it will be observed that the eighty-three and one-third per cent provision does not apply to properties belonging to Classes B and C. These properties must "be valued at the market value thereof as of the

time when such determination is or is required to be made." The only property specified as belonging to Class B is "Cash." Certainly, an appraisal of the value of cash may never be had and can never be needed. Cash is the very thing which the pledgor promises to pay, and necessarily if he has in hand cash sufficient in amount to equal his debt, the pledged property is on a parity with the debt. Class C includes "United States Treasury certificates of indebtedness" which, of course, are themselves cash. It includes "bank acceptances," and "promissory notes." It can hardly be said that there is any market by which the value of such securities may be ascertained. Moreover, if notes must be revalued, why should not bonds and mortgages be? The indenture provides as to both that they may not be received into the trust if the principal thereof exceeds a prescribed percentage of the value of the property securing them. It, also, includes "certificates of deposit issued by any bank or trust company." If such certificates are not worth their face, certainly there is no market by which their value may be judged. This leaves as the other securities of the class, bonds of the United States of America, bonds or corporate stock of the city of New York, and bonds of the State of New York. Doubtless, these are bought and sold in the market. Yet instances can hardly be imagined wherein an actual valuation of bonds would be less needed than in this. Thus, the pledgor argues that a market valuation must be made only in the instance of properties which are necessarily worth their face, which have no market value, or which at all times have a market value so near their face that the need of an appraisal is scarcely apparent. On the other hand, according to the argument, no valuation whatever is required in the case of bonds and mortgages, municipal bonds and mortgages, or bonds of the Prudence-Bonds Corporation secured by mortgages, securities which

of all the securities specified in the indenture are the most susceptible to fluctuations. In addition to this, the pledgor's argument ignores the fact that for the purpose of withdrawals and the maintenance of parity between the pledged property and the indebtedness which it secures, the former must be valued as provided in article 3, one of the provisions of which requires that bonds and mortgages must not disclose a principal sum which is greater than seventy-five per cent of the value of the real estate which secures them. As it has been agreed that the real estate securing the bonds specified in Class A has not a value equal to seventy-five per cent of the debt secured, a case for withdrawal has not been made.

The judgment should be affirmed with costs.

POUND, Ch. J., LEHMAN, O'BRIEN and CROUCH, JJ., concur; CRANE and HUBBS, JJ., not voting.

Judgment affirmed.