**In re REALTY ASSOCIATES SECURITIES CORPORATION.**

No. 45024.

District Court, E. D. New York.

June 11, 1946.

See also 58 F.Supp. 220.

Halpin, Keogh & St. John, of New York City (Eugene J. Keogh and Edward S. St. John, both of New York City, of counsel), for Trustees.

George Zolotar, of New York City (Kiva Berke, of New York City, of counsel), for Securities and Exchange Commission.

Hooker, Alley & Duncan, of New York City (Irving L. Schanzer, of New York City, of counsel), for debtor.

Root, Ballantine, Harlan, Bushby & Palmer, of New York City (William P. Palmer, of New York City, of counsel), for Consolidated Realty Corporation.

Lewis, Marks & Kanter, of Brooklyn, N. Y., and Julius Silver, of New York City (Jack L. Rappaport, of New York City, of counsel), for Bondholders Protective Committee.

Percival E. Jackson and Theodore N. Tarlau, both of New York City (Theodore N. Tarlau, of New York City, of counsel), for Bondholders.

Newman & Bisco, of New York City (Perry A. Hull, of New York City, of counsel), for Manufacturers Trust Co.

Ross W. Lynn, of New York City, for Trustee in Bankruptcy of New York Investors, Inc.

James F. Dealy, of New York City, and Lynn G. Goodnough, of Brooklyn, N. Y., for Amalgamated Properties, Inc.

418

MOSCOWITZ, District Judge.

Three distinct questions of law are presented upon this review of the Special Master's report. A recital of the facts common to all three may precede a statement of the questions.

The debtor publicly issued in each of the years 1925, 1927 and 1928 coupon bonds in the aggregate principal sum of $15 million bearing interest at 6% per annum. These bonds were guaranteed as to principal and interest by New York Investors, Inc. On July 10, 1933, the debtor filed a voluntary petition in bankruptcy in the United States District Court of the Eastern District of New York, culminating in an offer of composition which, as amended, was accepted by the creditors, approved by the court, 6 F.Supp. 549, and became effective as of the date of filing. Pursuant to the new indenture, the outstanding bonds were to mature on October 1, 1943 and were to bear interest at 5% per annum payable out of earnings, any unpaid portion to be cumulative and payable with the principal at maturity. The new indenture also provided for the reservation of any rights which the bondholders might have against New York Investors, Inc. growing out of the latter's guaranty of the three earlier bond issues. In 1935, an involuntary petition for the reorganization of New York Investors, Inc. was filed and eventually the assets of that estate were liquidated in bankruptcy, resulting in dividends totaling 2.0694%. The bondholders herein received that proportion of their claim on the guaranty.

On September 28, 1943, three days prior to the maturity of its obligations, the debtor herein filed a voluntary petition for reorganization under Chapter X of the Bankruptcy Act. During the course of the proceeding, various principal and interest payments were made to the bondholders which are immaterial to the matters at issue except insofar as they must be considered in computing the amounts unpaid. On April 2, 1945, before a plan of reorganization had been promulgated by the Trustees, the Court made an order which terminated and dismissed the proceeding for the unique reason that the debtor made available to the Trustees sufficient funds to pay all the public holders the full amount of the unpaid principal of their bonds with accrued and accumulated interest at 5% per annum to April 15, 1945, the date set for payment. Jurisdiction was reserved in this Court for determination of the three questions which are now here for review, the Trustees holding security for any payments required of the debtor.

The three matters will be discussed in the order of their enumeration. They are:

I. Whether interest is payable at 5% or 6% on the unpaid principal from October 1, 1943, to April 15, 1945;

II. Whether and at what rate interest is payable on the accumulated interest accrued on October 1, 1943 from that date until payment; and

III. Whether a fund representing the amount of the dividends paid by New York Investors, Inc., should be paid to the bondholders or to the trustee of the bankrupt New York Investors, Inc.

## I.

The Special Master has recommended that the bondholders' claim to interest at 6% per annum from October 1, 1943, to April 15, 1945, on principal be allowed. It is the contention of the debtor that interest at 5% for the same period is due, which has already been paid.

The difference in views seems to stem from opposing applications of what is evidently settled New York law. Where a bond or other contract contains no provision for a rate of interest in the event that the principal is not paid at maturity, the law will impose as damages against the debtor the obligation to pay interest at the legal rate of 6% from the due date. Ferris v. Hard, 135 N.Y. 354, 32 N.E. 129; Pryor v. City of Buffalo, 197 N.Y. 123, 90 N.E. 423; Sands v. Gilleran, 159 App.Div. 37, 144 N.Y.S. 337; Oswego City Sav. Bank v. Board of Education, 70 App.Div. 538, 75 N.Y.S. 417, affirmed 174 N.Y. 515, 66 N.E. 1113. On the other hand, if the parties have themselves agreed that the rate of interest required to be paid before maturity shall also govern in the event

that the principal is not paid when due, the agreement will be given effect and the debtor will be bound to pay the contract rate, be it higher or lower than 6%. Taylor v. Wing, 84 N.Y. 471; O'Brien v. Young, 95 N.Y. 428, 47 Am.Rep. 64; Zimmermann v. Klauber, 139 App.Div. 26, 123 N.Y.S. 642; City Real Estate Co. v. MacFarland, 67 Misc. 286, 122 N.Y.S. 477; Elmira, Iron & Steel Rolling Mill Co. v. City of Elmira, 5 Misc. 194, 25 N.Y.S. 657; Agency of Canadian Car & Foundry Co. v. American Can Co., 2 Cir., 1919, 258 F. 363, 6 A.L.R. 1182; In re Oklahoma Ry. Co., D.C.Okl. 1945, 61 F.Supp. 96. Difficulty often arises, as it does here, in determining whether or not the parties have agreed upon a rate to control after maturity. The answer lies in construction of the contract to ascertain their intention.

The pertinent provisions of the contract here involved, viz. the bonds as controlled by the 1933 indenture, are as follows:

"Article III. Interest in Retirement Covenants by the Company.

"Section 1: 'The Company covenants that it will pay to the registered holder * * * until the reduced principal of each bond shall be duly paid * * * interest on the reduced principal amount thereof from July 10th, 1933 at the rate of five percent (5%) per annum. * * *'

"Article IV. Particular Covenants of the Company.

"Section 1: 'The Company covenants * * * that it will duly and punctually pay the principal as reduced * * * together with interest at the rate of five percent (5%) per annum accrued thereon and not theretofore paid on October 1st, 1943. * * *'"

It has been held that a contract which provides a rate of interest "until the principal shall be paid" must be construed as evidencing the intention of the parties that the contract rate should govern to and including the time when the principal debt is actually satisfied, however long after maturity that may be. O'Brien v. Young, supra; Zimmermann v. Klauber, supra; to same effect, see In re Oklahoma Ry. Co., supra, "until paid"; Taylor v. Wing, supra, "until the payment of the said principal sum"; City Real Estate v. MacFarland, supra, "until the whole of said principal sum is paid"; Agency of Canadian Car & Foundry Co. v. American Can Co., supra [258 F. 370], "to the date of payment of the amount". It is the position of the debtor that the obligation stated in the bonds in issue is controlled by these precedents. But the Company covenanted to pay interest at 5% on the principal "until duly paid". Does the use of the word "duly" connote an intention different from that determined in the cited cases? No exact precedent has been found. "Duly" has been defined as meaning "in due time or proper manner," "in accordance with what is right, required or suitable," "properly or regularly," "when or as due," and "agreeable to obligation or propriety." 13 Words and Phrases, Perm.Ed., 608 and 1946 Pocket Part 122.

However, the use by the parties of the phrase "until duly paid" is given marked significance when it is noted that in its particular covenant the Company pledges "duly and punctually" to pay the principal "on October 1st, 1943." It is thus apparent that the word was used to denote the obligation of prompt payment at maturity. Both these covenants were dealing solely with the period up to October 1, 1943, and not beyond. To adopt the debtor's construction would require entirely reading out of the agreement the word "duly."

In support of its argument that the contract rate governs, the debtor points to Article VI of the indenture, which sets forth the remedies accorded the indenture trustee in the event of enumerated defaults. While most of these have the effect of accelerating the maturity of the bonds and would thus not be applicable, it is true that included in the list is non-payment at maturity. In specifying the order of priority of distribution to bondholders by the indenture trustee of monies collected upon employing the remedies authorized, it is provided that they shall be applied to the payment of principal "with interest at the rate of five percent." The debtor contends that this Article clearly shows that the rate of 5% should continue beyond maturity and that to hold otherwise would create an inconsistency. It is, of course, immate-

420

rial that the remedy provided in Article VI has not been employed in this proceeding; being part of the agreement, it may be resorted to for any light it sheds upon the intention of the parties. However, the difficulties which would attend the adoption of the debtor's contention in various possible circumstances cast serious doubt upon its efficacy. If the contract rate of interest provided before maturity was to continue thereafter, it must needs be subject to the same limitation of payment only out of earnings, a strained result in view of Article IV, Section 1, which provides for the payment of accumulated interest "on October 1st, 1943." Under a literal application of Article VI as construed by the debtor, it might also occur that the proceeds of a judgment bearing 6% interest recovered by the indenture trustee could only be distributed to the bondholders in the payment of principal with interest at 5%, the debtor sharing in the balance. These anomalies render Article VI itself rather ambiguous. To the extent that this collateral provision for a rate of interest, contained in an Article dealing primarily with remedies, is actually in conflict with the direct covenant of the company to pay interest contained in Article III, the latter must prevail upon a construction of this obligation. Article III, Section 1 is plain and unequivocal when read in conjunction with the particular covenant of Article IV.

There is no indication in the agreement of the parties that interest should be at 5% beyond maturity. In the absence of a stipulation that the contract rate shall continue, such an intendment is not to be inferred. Holden v. Freedman's Savings and Trust Co., 100 U.S. 72, 25 L.Ed. 567. But even assuming arguendo that Article VI be deemed to create an ambiguity, decision herein being to the contrary, such ambiguity would have to be resolved in favor of the bondholders and they would still be entitled to interest at 6%. Prudence Co. v. Central Hanover Bank & Trust Co., 261 N.Y. 420, 185 N.E. 687, affirming 237 App.Div. 595, 262 N.Y.S. 311; Barnes v. United Steel Works Corp., Sup., 11 N.Y.S.2d 161.

The Special Master based his recommendation primarily on what has come to be denominated in this proceeding as the "judgment theory", according to which it was his view that the bondholders should in no way be prejudiced by the debtor's institution of a Chapter X proceeding, 11 U.S.C.A. § 501 et seq., and that they could therefore not now be denied the right to interest at 6%, to which they would have become entitled had they not been stayed from procuring judgments, at least for the unpaid principal, upon maturity of the bonds on October 1, 1943. Aside from the judgment theory, the Master found that the bonds made no provision for the continuance of the contract rate of interest after maturity and that the bondholders were therefore entitled to simple interest at the legal rate.

The debtor has construed the Special Master's opinion as holding that under the so-called "judgment theory" the bondholders would be entitled to interest at 6% even if it were determined that the bonds provided for interest at 5% after maturity. In view of the determination herein made that the parties have not agreed that the contract rate should continue beyond maturity, it is not necessary to decide that question. It does not appear that the cases cited by the bondholders sustain such a proposition. In re John Osborn's Sons & Co., Inc., 2 Cir., 1910, 177 F. 184, 29 L.R.A., N.S., 887, is not similar, since the allowed claims which were there proved in the bankruptcy proceeding were not based upon contracts bearing a stipulated rate of interest but were for goods sold and delivered. It was merely held that such claims were entitled to be treated as judgments and as such bear interest at the legal rate but there was no conflict with a contract rate. Nor was there any such conflict in the case of National Bank of the Commonwealth of New York City v. Mechanics' National Bank, 94 U.S. 437, 24 L.Ed 176, where the claimants were depositors in a bank which defaulted on its obligations.

It is not necessary to resort to any judgment theory to sustain the right of creditors to interest on at least the principal of their claims until the time of distribution where it develops that the debtor is solvent and that the assets of the estate prove sufficient. American Iron & Steel

Mfg. Co. v. Seaboard Air Line Railway, 233 U.S. 261, 34 S.Ct. 502, 58 L.Ed. 949; Johnson v. Norris, 5 Cir., 1911, 190 F. 459, L.R.A.1915B, 884. The debtor does not dispute that interest is payable on the principal after maturity until payment thereof; the only conflict is in the rate.

■ The bondholders are entitled to interest at 6% on the principal to April 15, 1945 and the Special Master's recommendation upon this issue is confirmed.

## II.

The Special Master has recommended against allowing the claim of the bondholders to interest òn the accummulated accrued interest unpaid on October 1, 1943, from that date until payment of claims on April 15, 1945. He has stated the law of New York to be that interest is not payable on interest unless supported by a valid agreement so providing and that the absence of any agreement here requires denial of the bondholders' claim. No contention is made that there is provision in the bonds or in the 1933 indenture dealing with this subject.

■ However, there is a distinction between the question passed upon in the cases cited by the Special Master as authority and the question at hand. Young v. Hill, 67 N.Y. 162, 23 Am.Rep. 99; Newburger-Morris Co. v. Talcott, 219 N.Y. 505, 114 N.E. 846, 3 A.L.R. 287; Reusens v. Arkenburgh, 135 App.Div. 75, 119 N.Y.S. 821; Transbel Inv. Co., Inc., v. Roth, D.C.S.D.N.Y.1940, 36 F.Supp. 396. These decisions condemn as against the public policy of New York the practice of compounding interest unless a valid agreement so providing has been entered into after the interest has accrued. While this is sometimes adverted to as interest on interest, the designation is misleading. To compound interest means to add to the principal at the end of each interest period the amount of the interest for that period so as repeatedly to broaden the the base upon which future interest is computed. Thus, if the bondholders contended that on each January 1st and July 1st the interest for the six months past should be computed and added to the unpaid principal, upon which increased base interest for the next six months

would be computed, that would constitute the compounding of interest and would be contrary to the public policy of New York. However, that is not the case; no interest is sought on instalments of interest. The issue is whether or not the bondholders are entitled merely to simple interest on their one unpaid claim, consisting of principal and interest which became due on October 1, 1943.

The distinction was inferred to in American Brake Shoe & Foundry Co. v. Interborough R. T. Co., D.C.S.D.N.Y., 1939, 26 F.Supp. 954, where the court stated at page 955 of 26 F.Supp.: "Compounding interest in the adding of accumulated interest to the principal at periodic intervals. An agreement to pay simple interest on an overdue installment of interest is different. Computations show it to be far less onerous on the debtor." The same distinction is recognized in the case which has been most often cited as authority against the validity of compound interest, Young v. Hill, 67 N.Y. 162, 23 Am.Rep. 99, where at page 174 of 67 N.Y., the court stated: "An agreement to pay simple interest upon the several instalments of interest as they became due * * * might not be unreasonable or inequitable." It is thus clear that the reason for the judicial outlawing of compound interest is based upon its being unduly oppressive and even ruinous to debtors, a criticism which does not lie against simple interest. The bondholders' claim in the instant case is only for simple interest upon a debt which has become due and is therefore not contrary to public policy.

■ Interest ordinarily ceases upon the inception of the bankruptcy proceeding (11 U.S.C.A. § 103, sub. a (1, 5); Sexton v. Dreyfus, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244; Brown v. Leo, 2 Cir., 1929, 34 F.2d 127) it is well established when a surplus remains in the estate after all allowed claims have been paid that distribution to the creditors of interest on their claims is to be made before the debtor has any right to a return of assets. People v. American Loan & Trust Co., 172 N.Y. 371, 65 N.E. 200; People v. Merchants' Trust Co., 187 N.Y. 293, 79 N.E. 1004. Proof of an interest bearing claim is proof of the interest collectible on such claim and no

separate proof is needed when a surplus develops in the debtor's estate. Claims which have been proved and allowed are, in effect, judgments and are entitled to be treated as judgments and, as such, interest accruing after their allowance should be paid thereon. In re John Osborne's Sons & Co., 2 Cir., 177 F. 184, 29 L.R.A.N.S., 887; National Bank of Commonwealth of New York City v. Mechanics' National Bank, 94 U.S. 437, 24 L.Ed. 176; Johnson v. Norris, 190 F. 459, L.R.A.1915B, 884; cf. American Woolen Co. of New York v. Samuelsohn, 226 N.Y. 61, 123 N.E. 154.

 In its petition for reorganization the debtor conceded liability in the amount of $5,710,400.00 as the unpaid principal of the outstanding bonds and unpaid interest thereon from July 10, 1933 to April 10, 1943 amounting to $1,167,679.76. As adjusted to maturity on October 1, 1943, the interest amounts to $1,286,646.43. Since these obligations are liquidated and undisputed, the filing of proofs of claim is not necessary. 11 U.S.C.A. § 624(4). The admitted liability of the debtor thus constituted the equivalent of one claim for $6,997,046.43, which has now been paid in full. The debtor admits its liability for interest on that part of the claim which was the principal of the bonds but since the bonds were by their terms interest-bearing, the interest which matured with the principal on October 1, 1943 constituted an equally integral part of the same claim. There is no basis for recognizing any distinction between these two parts of the one claim.

The decision in In re Norcor Mfg. Co., D. C.Wis., 1941, 36 F.Supp. 978 is not at variance with this determination. There the claim was for royalties upon chairs manufactured by the debtor and not upon a contract which called for interest as part of the obligation. The plan of reorganization contemplated the payment of the claim for royalties in full together with simple interest at 6% to the date of payment. It was the claimant's contention that the interest due at the time when the special master's report on his claim was confirmed should be added to the claim and that interest to the date of payment should be computed on this new and broader base. This was clearly a case of compound interest and was

so denominated by the court in its denial of claimant's view that "he is justified in asking for compound interest." 36 F. Supp. 979. Nor is this case a repudiation of the judgment theory. In stating that the allowance of the claim by the master did not change it into a judgment, the court pointed out that "it was not payable or due on said date." 36 F.Supp. 980. The principal and interest in the instant case were due and payable on October 1, 1943.

Since it has been determined under Point I that the legal rate of interest was payable after maturity, the same rate applies here. The bondholders are entitled to interest at 6% on the accumulated accrued interest which was unpaid on October 1, 1943, from that date to April 15, 1945, the computation of which is not in dispute.

### III.

The third issue requires a determination as to whether the bondholders or New York Investors, Inc. are entitled to what has herein come to be called the guaranty fund, being a sum equivalent to the aggregate dividends paid to the Realty bondholders from the estate in bankruptcy of New York Investors, Inc. The Special Master has recommended that the whole of this fund should be paid to the bondholders.

It will be recalled that payment of the debtor's three bond issues of 1925, 1927 and 1928 were guaranteed as to principal and interest by New York Investors, Inc. The bonds bore interest at the rate of 6%. Pursuant to the 1933 composition, the debtor's interest obligation thereafter was fixed at 5%. The rights of the bondholders, under the guaranty, whatever they might be, were adequately reserved in the new indenture; the controversy revolves about the question of what those rights are.

In the bankruptcy proceeding of New York Investors, Inc., Manufacturers Trust Company as indenture trustee for the bondholders herein, filed but one claim in an amount which represented the unpaid principal of the guaranteed bonds together with interest thereon at 6%. Dividends totaling 2.0694 percent were paid to creditors of the bankrupt and that portion of the

bondholders' allowed claim was paid to them. It is that amount, approximately $153,000, which has been withheld in making payment to the bondholders herein pending this determination whether they are entitled to it in addition to the principal and interest thereon at 5% to maturity which they have already received. The trustee of New York Investors, Inc. has asserted a claim to the fund principally upon the contention that the bondholders having been paid in full, the fund must be turned over to the trustee of the bankrupt for distribution among general creditors, in which it is conceded the bondholders would share in the proportion which their claim bears to the total claims allowed in that proceeding. It is to be noted that the controversy is between New York Investors, Inc., as guarantor and the bondholders; the debtor admits its liability to one or the other of these parties and is not directly interested in this dispute. If the alleged right of the guarantor to indemnity from the debtor were in issue, the guarantor might find it difficult to sustain its position by any authority, especially since no provision was made in the 1933 composition concerning such a claim and it would therefore be deemed to have been discharged.

 When creditors seek to enforce against a primary debtor an obligation upon which a guarantor has made partial payments, allowance must be made for such payments and the guarantor thereupon becomes subrogated to the rights of the creditors as to the rest of the debtor's obligation. For this proposition American Surety Co. of New York v. Bethlehem Nat. Bank, 314 U.S. 314, 62 S. Ct. 226, 86 L.Ed. 241, 138 A.L.R. 509 and related cases relied upon by New York Investors, Inc. are authority but they do not sustain the extension advanced by the guarantor. If payments which the guarantor made, combined with payments by the debtor, exceed the amount to which the creditors are entitled, the creditors would hold such excess in trust for the guarantor. In re United Cigar Stores Co. of America 2 Cir., 1934, 73 F.2d 296, 298; Swarts v. Fourth Nat. Bank, 8 Cir., 1902, 117 F. 1, 12. However, not until the creditors have actually received more than what is owing to them is there any excess to be accounted for and they are entitled to any monies properly applicable to their claim. Not until they have been paid in full is there any right to subrogation. Union Trust Co. of Rochester v. Willsea, 275 N.Y. 164, 9 N.E.2d 820, 112 A.L.R. 1175. In the Bethlehem Bank case, supra, the guaranty obligation was identical to and co-extensive with the principal debt; thus, when the guarantor paid the balance of the debt upon the insolvency of the principal, the entire obligation of the guarantor was satisfied and the creditor was not entitled to receive anything further from any source whatever. In such circumstances, the guarantor is subrogated and alone may proceed against the debtor for whatever may be recovered of any sum it has paid. However, this is not the siuation in the instant case.

The confusion here seems to stem from a misunderstanding of the claim being asserted by the bondholders. The only relationship between New York Investors, Inc. and the bondholders of the debtor was that which came into being upon the former's agreement to pay the principal of the debtor's 1925, 1927 and 1928 bonds together with interest at 6% until the bonds were paid. The 1933 composition had no effect whatever upon this liability of New York Investors, Inc. except expressly to provide for its preservation. No new liability was assumed and the old was not altered. It is doubtful whether the express reservation was even necessary in view of Section 16 of the Bankruptcy Act, 11 U.S.C.A. § 34, which specifically provides that the liability of the guarantor shall not be altered by the discharge of the bankrupt. In re Nine North Church St., Inc., 2 Cir., 1936, 82 F.2d 186; Union Trust Co. v. Willsea, supra.

There is no support for the suggestion that the guarantee was divided into two parts by the composition and that New York Investors, Inc. was thereafter responsible as guarantor on the new obligation of the debtor to pay principal and interest at 5% and primarily liable for the additional 1% interest preserved as a right in the composition. The 1933 composition agreement and the indenture made pur-

suant to that agreement constituted a new contract which defined and determined the liabilities of the debtor thereafter. That the new obligation of the debtor was stamped upon the old bonds was merely a matter of mechanics and convenience, since they were the original and only bonds in existence, 'and cannot be held to have affected the substance of any rights. The guaranty was not extended so as to cover the new obligation and New York Investors, Inc. had no relation to nor duty concerning the debtor's obligation after 1933. Two separate and distinct liabilities to the bondholders were henceforth in existence. One was by the debtor, as provided in the 1933 indenture, to pay principal and interest at 5%. The other was by New York Investors, Inc., to pay principal and interest at 6%, on any part thereof which was not received by the bondholders from other sources, which was pursuant to the guaranty it had made. Only one claim was filed in the New York Investors, Inc. bankruptcy by the Realty bondholders and that was for the full amount of the principal and interest at 6%.

The principal of the bonds was not paid until after October 1, 1943, and the bondholders have recovered only 5% interest until that date. They will not get any more from the debtor because its obligation was modified to that extent in 1933 and has been satisfied. But the guarantor was still liable for the unpaid balance of the one obligation which it assumed, being reduced by the payments made by the debtor. The fund in dispute will not equal that balance and must therefore be awarded to the bondholders. The guarantor can have no interest therein until its entire guarantee obligation has been satisfied.

It appears to be one of the contentions of the trustee of New York Investors, Inc. that to allow the bondholders to retain the whole fund would result in a preference to them as against other general creditors of the bankrupt who have received only 2.0694 percent of their claims, since the amount of the fund represents a much larger percentage of the unpaid balance of the guarantor's obligation as reduced by the debtor's payments. But it

has been conclusively settled that an obligee of a bond or the holder of a claim upon which several parties are liable may prove its entire claim against the estate of any who become bankrupt and recover dividends calculated on the basis of such entire claim as it existed when the petition was filed, without regard to partial payments made by other obligors until from all sources it has been paid in full. Board of Comm'rs of Shawnee County, Kansas, v. Hurley, 8 Cir., 169 F. 92, 97 and cases cited; In re United Cigar Stores Co. of America, supra; Merrill' v. National Bank of Jacksonville, 173 U.S. 131, 19 S.Ct. 360, 43 L.Ed. 640. Thus, the bondholders are entitled to dividends upon their claims as originally filed despite the subsequent payments by the debtor, since they have not yet been paid in full on the obligation of the guarantor which has been reserved to them, nor will the amount of the fund constitute such full payment. The fund in dispute which is equal to those dividends belongs to the bondholders.

The claim of the bondholders is allowed and that filed by New York Investors, Inc. is denied.

Settle order on notice in accordance with this opinion.