EMPIRE PROPERTIES CORPORATION and Others, Plaintiffs, *v.* MANU-FACTURERS TRUST COMPANY, as Trustee under Indenture of Trust Made by and between EMPIRE PROPERTIES CORPORATION and Others, Dated as of January 1, 1935, and THE METROPOLITAN CASUALTY INSURANCE COMPANY OF NEW YORK, Defendants.

First Department, June 24, 1938.

*Harold W. Newman, Jr.,* of counsel [*David Miller* with him on the brief], for the plaintiffs.

*Francis B. Hamlin* of counsel [*Emerson F. Davis* with him on the brief; *Hurd, Hamlin & Hubbell,* attorneys], for the defendant Manufacturers Trust Company, as trustee.

GLENNON, J. The facts upon which the parties have agreed, covering, as they do, twenty pages of the record, will only be referred to in so far as they are essential to indicate our reasons why judgment should be rendered in favor of plaintiffs.

The sole question presented is whether $28,864.23 constitutes principal or income of the trust of which defendant Manufacturers Trust Company is trustee.

During the years 1926 and 1927, corporations owning eleven apartment house properties in and near New York city issued bond certificates under eleven mortgages, deeds of trust or trust indentures. Payments of principal and interest on the bond certificates were guaranteed by defendant Metropolitan Casualty Insurance Company of New York, and there was outstanding an aggregate amount of $3,087,477 in certificates.

In 1934 defaults occurred and the surety company at first made efforts to carry out its obligation and acquired defaulted bond certificates and interest warrants. Its burden became too great. A plan of readjustment was made. By the terms of this plan the holders of ninety-eight per cent of certificates transferred them to the Empire Properties Corporation. The latter pledged the certificates and the interest claims as collateral under an indenture dated January 1, 1935, to the Manufacturers Trust Company, as trustee. The Empire Properties Corporation issued certificates to the holders.

Pursuant to the terms of the amended deposit agreement, the surety company was to pay or cause to be paid to the holders of all deposited bond certificates all unpaid interest thereon computed through December 31, 1934, and also pay or cause to be paid all taxes, assessments and water rates "against all of such eleven apartment house properties which were due and unpaid on January 1, 1935, with any interest and penalties due thereon." The surety was to do so without using any of the proceeds or earnings of any of said properties "except earnings prior to January 1, 1935."

In short, by the terms of the agreement, the surety was relieved of its guaranty of the eleven mortgages. Its new obligation was the payment of interest on the new bonds for ten years. The fixed interest was two per cent for the first five years and three per cent for the last five years. Net earnings in excess of an amount sufficient to pay the fixed rate are called "excess income." The bondholders were entitled to payment of additional interest out of excess income up to six per cent. Available net earnings were to be calculated by making deductions from "gross income." Gross income is defined as "any income received by the Company (whether by way of interest or in any other manner) other than payments received on account of the principal of evidences of indebtedness included in its assets and other than the principal proceeds of sale or exchange of any assets or proceeds of insurance upon any of its assets."

At the time the agreement was made titles to ten of the eleven pieces of property had been acquired by companies controlled by the surety and were subsequently transferred to a wholly owned subsidiary of the Empire Properties Corporation. At that time there was pending, since 1931, a partial foreclosure affecting the eleventh parcel, which is referred to as the Shermave property. A receiver was in possession. After the foreclosure sale this property was transferred to the Emprop Corporation, the subsidiary of the first named plaintiff. The receiver in the foreclosure action has accounted. He paid taxes and certain other charges on the

property which were liens prior to January 1, 1935, out of earnings received subsequent to January 1, 1935. The amount so expended was $14,811.49. The surety company has since paid this sum to the plaintiff Empire Properties Corporation, which in turn delivered it to the trustee. In addition thereto the receiver had a balance of $14,225.42 which has also been received by the trustee.

This controversy concerns itself with a total of $28,864.23, which is the balance remaining in the hands of the trustee after proper allowance had been made for unacquired bond certificates. The plaintiffs claim that this money is principal and should be applied to the purchase of bonds held by certificate holders. The trustee on the other hand insists that it is income and should be used for the payment of interest.

The trust indenture provides that the trustee was to pay interest out of " available net earnings." Available net earnings were to be calculated by making specified deductions from gross income. Gross income, we repeat, is defined as " any income received by the Company * * * other than payments received on account of the principal of evidences of indebtedness included in its assets." It is our opinion that the payments aggregating $28,864.23 were " payments received on account of the principal of evidences of indebtedness " within the meaning and intendment of the agreement.

The indenture made no provision as to the disposition of the moneys to be turned over eventually by the receiver although all parties knew at the time that a receiver had been appointed and was managing the property. The defendant trustee contends that the omission in the indenture of the word " receiver " was inadvertent. The plaintiffs insist that it was not. In any event, in construing the trust indenture, we are not at liberty to write the word " receiver " into it. (*Central Union Trust Co.* v. *Trimble*, 255 N. Y. 88; *Graf* v. *Hope Building Corp.*, 254 id. 1.)

Ordinarily in foreclosure actions the duty of the receiver is to preserve the rents and profits for the purpose of enabling the plaintiff to realize the full amount of the mortgage, if a deficiency should result. Thus, the moneys which a receiver turns over are applied to the principal. Here, since the agreement is silent as to the manner in which these moneys are to be applied, the same rule should govern.

For the reasons assigned judgment is granted in favor of plaintiffs, but without costs in accordance with the stipulation.

O'MALLEY, TOWNLEY, COHN and CALLAHAN, JJ., concur.

Judgment unanimously directed in favor of the plaintiffs, without costs. Settle order on notice.