EMPIRE PROPERTIES CORPORATION, FRANCIS ASBURY PALMER FUND, and HENRY J. GAEDE and Another, as Trustees under the Last Will and Testament of LILIAN B. VOGT, Deceased, Plaintiffs, v. MANUFACTURERS TRUST COMPANY, as Trustee under Indenture of Trust Made by and between EMPIRE PROPERTIES CORPORATION and Others, and Dated as of January 1, 1935, and THE METROPOLITAN CASUALTY INSURANCE COMPANY OF NEW YORK, Defendants.

First Department, June 18, 1941.

*Harold W. Newman, Jr.,* of counsel [*David Miller* with him on the brief; *Harold W. Newman, Jr.,* attorney for Empire Properties Corporation; *Richard Kelly,* attorney for Francis Asbury Palmer Fund, and others, as trustees, etc.], for the plaintiffs.

*Francis B. Hamlin* of counsel [*Emerson F. Davis* with him on the brief; *Hurd, Hamlin & Hubbell,* attorneys], for the defendant Manufacturers Trust Company, as trustee.

DORE, J. This is a submission of controversy on an agreed statement of facts pursuant to sections 546–548 of the Civil Practice Act. The question presented concerns the construction of an indenture of trust made by Empire Properties Corporation (hereinafter called the " Company "), The Metropolitan Casualty Insurance Company of New York, surety, and Manufacturers Trust Company, trustee, dated as of January 1, 1935. The issue is whether under the terms of the indenture $62,907.02 of the principal amount of bonds, previously purchased and canceled with principal assets other than the proceeds of the sale of the apartment house properties, the underlying security of the bonds, may be considered in determining the amount of bonds the indenture requires to be delivered to the trustee as a condition precedent to the proposed sale of another apartment house.

The same indenture of trust has been the subject of a previous submission of controversy before this court (*Empire Properties Corp.* v. *Manufacturers Trust Co.,* 254 App. Div. 507), and in the opinion in that case the facts with regard to the genesis of the indenture are stated and it is unnecessary to repeat them here. On that submission the issue was whether a total of $28,864.23, cash received by the company, should be considered principal, as contended by the plaintiffs, and applied to the purchase of bonds held by certificate holders, or should be considered income, as contended by the trustee, and used for the payment of interest. The sum was held to be principal.

The company and certain of the bondholders are the plaintiffs in this action; the trustee and a surety are defendants. Under prior decisions, we are required to accept the submission and the judgment of the court will be binding on the parties thereto

and bondholders. (*Title Guarantee & Trust Co.* v. *Mortgage Commission*, 271 N. Y. 302, 305; *Prudence Co., Inc.,* v. *Central Hanover Bank & Trust Co.,* 237 App. Div. 595.)

The indenture provides that bonds should be issued thereunder to an amount not exceeding the aggregate principal of the bond certificates outstanding December 31, 1934, under the original eleven issues. Bonds so issued under the indenture were secured by collateral deposited with the trustee consisting of original bond certificates and the eleven apartment house properties. The purpose of the indenture was to provide for the orderly liquidation of the trust collateral.

The prices at which the various apartment house properties may be sold are limited by the provisions of section 9 of article V of the indenture, which provides that no apartment house property securing the trust collateral may be sold if the proceeds of the sale are less than the principal amount of the outstanding and uncanceled bond certificates as of December 31, 1934, secured by such apartment house property unless:

" (a) The Company shall acquire, at a net cost not exceeding the net proceeds of the sale, a principal amount of Bonds equal to one hundred and seven per cent. (107%) of the principal amount of outstanding and uncancelled Bond Certificates secured by such property and pledged with the Trustee hereunder, which Bonds shall be delivered to said Trustee and shall be forthwith cancelled; or

" (b) There shall be delivered to the Trustee hereunder and forthwith cancelled an amount of Bonds equal in principal amount to the difference between the net sale price to the Company and one hundred and seven per cent. (107%) of the principal amount of outstanding and uncancelled Bond Certificates secured by such property and pledged with the Trustee; but, until fixed interest and additional interest shall have been paid in full, none of the earnings from the properties shall be used by the Company for the purchase of Bonds.

" (c) However, if the Trustee hereunder shall have so received and cancelled Bonds in excess of one hundred and seven per cent. (107%) of the principal amount of outstanding and uncancelled Bond Certificates pledged with the Trustee secured by all property sold, such excess may be included as part of the Bonds to be delivered up in connection with subsequent sales."

Subdivision 5 of section 1 of article VI provides " that all principal collections and proceeds of sale received in liquidation of its assets shall be used only for " the retirement of bonds by purchase or redemption in the manner therein specified. There is no provision in said section or elsewhere in the indenture stating

when such principal collections or proceeds of sale are to be applied to the purchase or redemption of bonds.

Although the indenture provides that the proceeds of sales and principal collections must be paid over to the trustee, it confers upon the company, so long as it is not in default, the discretion to determine the manner of applying such funds to the purchase of bonds. Section 9 of article IV provides that bonds may be purchased by the company " at any time and from time to time at public or private sale out of any excess income available therefor or out of any cash held as Trust Collateral  *  *  *.  Whenever the Company shall direct the application of any cash held as Trust Collateral for the purchase of Bonds at public or private sale, the Trustee shall apply such cash as so directed."

The indenture also provides that all bonds purchased under any provision of the indenture shall be cancelled and cremated by the trustee and no bonds authenticated or delivered in lieu thereof.

The company has sold six of the underlying apartment house properties and with the proceeds acquired bonds which were thereupon delivered to the trustee and cancelled in the sum of $2,184,170.05. In addition, the company has received moneys constituting principal collections as defined in the indenture with which it has previously purchased and retired additional bonds in the aggregate principal amount of $62,907.02. These additional bonds were from time to time, as purchased, delivered to the trustee and forthwith canceled and cremated. There remain five unsold properties constituting security for bond certificates outstanding in the aggregate principal of $1,072,583.32 and these five properties have been appraised in January, 1941, for the aggregate sum of $688,200. Deducting from the $3,068,877.07 bonds heretofore issued by the company the $2,184,170.05 bonds retired with the proceeds of sales of the six properties sold and the $62,907.02 bonds retired with other principal collections, there are now outstanding $821,800 bonds.

The company now contemplates the sale of one of the remaining apartment house properties and claims that the additional bonds in the principal of $62,907.02, previously purchased and previously canceled, should be included and considered as part of the bonds to be delivered up in connection with the contemplated sale under the provisions of subdivision (b) of section 9 of article V. That amount of bonds has not heretofore been taken into consideration in connection with any previous property. The trustee has refused to acquiesce in such application of the said $62,907.02, and the issue is whether under the terms of the agreement the trustee is bound to acquiesce.

The company has no option to purchase any of its bonds at a discount such as it had at the times of the six sales heretofore made, and unless the trustee approves the application the company may not be able to sell the remaining properties in accordance with the intent and purpose of the indenture. The surety takes no position in the controversy. While the indenture itself is not before us, the submission, which we consider *bona fide*, states that none of the provisions is material other than those quoted or summarized in the submission of controversy.

We think that section 9 of article V justifies the refusal of the trustee to acquiesce in the application of the $62,907.02 canceled bonds as demanded by plaintiffs in connection with the contemplated sale. That amount of bonds was purchased and retired at various times between July, 1938, and April, 1941, and such retirement and cancellation were obligatory under the indenture when the bonds were delivered to the trustee. Article V prohibits any sale if the proceeds are less than the principal amount of the outstanding bond certificates unless (subd. b) there shall be delivered to the trustee and " forthwith " canceled an amount of bonds equal in principal to the difference between the net sales price of the property and 107 per cent of the outstanding bond certificates secured by such property and pledged with the trustee. We think this refers to a contemporaneous delivery of bonds and to net proceeds of sale, and that it does not refer to bonds such as those in question which on prior occasions have been delivered and canceled. The word " forthwith " connotes a present or an immediately future cancellation and does not refer to bonds concededly canceled long prior to the sale in question. The language of the agreement fairly contemplates the cancellation of the bonds contemporaneously with the sale of the properties and that bonds theretofore canceled cannot be considered as part of the bonds that are to be " forthwith " canceled at the time of the receipt of the proceeds of the sale.

The indenture requires that bond certificates in a principal amount equivalent to bonds issued should be pledged as collateral. It further contemplates an increase in the proportion of bond certificates with every liquidation, so that the remaining outstanding bonds shall be more fully secured. Our construction is consistent with the purpose of the indenture to protect the holders of presently outstanding bonds.

The trustee is entitled to judgment, without costs, approving its refusal to comply with plaintiffs' demand, and holding that it is justified in refusing to acquiesce in the application of the $62,907.02 of bonds as part of the bonds to be delivered up and considered in

connection with the contemplated sale by the company of one of the apartment house properties.

Judgment should be directed in favor of the defendants without costs.

MARTIN, P. J., TOWNLEY, GLENNON and CALLAHAN, JJ., concur.

Judgment unanimously directed in favor of defendants without costs. Settle order on notice.