**MARINE MIDLAND TRUST CO. OF NEW YORK v. ALLEGHANY CORPORATION.**

**CONTINENTAL BANK & TRUST CO. OF NEW YORK v. SAME.**

District Court, S. D. New York.

June 24, 1939.

Cook, Nathan, Lehman & Greenman, of New York City (Alfred A. Cook, Harold Nathan, Frederick F. Greenman, Daniel M. Sandomire and Henry Cohen, all of New York City, of counsel), for plaintiff, Marine Midland Trust Co. of New York.

Carl O. Hoffmann, of New York City (A. Zanger and I. Ratner, both of New York City, of counsel), for plaintiff Continental Bank & Trust Co. of New York.

Donovan, Leisure, Newton & Lumbard, of New York City (Carl E. Newton and David F. Rawson, both of New York City, of counsel), for defendant.

LEIBELL, District Judge.

In each of these suits by a plaintiff Trust Company, as trustee for bondholders under one of the issues of the defendant, Alleghany Corporation, plaintiff seeks specific performance of defendant's covenant to maintain the collateral security at 150% of the principal amount of the outstanding bonds of such issue. On these two bond issues the collateral is now less than the stipulated 150%.

Upon the present application, plaintiff in each suit seeks a preliminary injunction restraining the defendant from disposing of certain unpledged assets, cash in the sum of $413,325.39, which by arrangement is being held on deposit subject to the determination of these motions. The said assets, it is claimed, are subject to the agreement to deposit collateral with the plaintiff trustees and should be used for that purpose. It is shown, on the part of the plaintiffs, that if these assets are disposed of or used for some other purpose by the defendant, a final decree of specific performance, if rendered after trial of the issues in these actions, will be an empty gesture for the reason that the defendant would then be without the means to comply with said decree.

The defendant resists the application for a temporary injunction upon two main grounds: First, that the defendant never made a binding promise to keep and maintain on deposit with the trustee collateral security in an amount not less than 150% of the principal amount of outstanding bonds; secondly, that the granting of a preliminary injunction would involve such hardship upon the defendant that a court of equity in its discretion should refuse the relief sought by the present applications.

The promise to deposit collateral in the 150% ratio had its origin in a letter signed by the then president of defendant, which formed part of the advertisement in the public press and of the offering circular, wherein the bankers announced in 1929 and 1930 that the bonds were open to public subscription. The letter recites: "The Indenture * * * is to contain provisions for the maintenance by the Corporation at all times on deposit with the Trustee of securities of an aggregate value (determined as provided in the Indenture) of at least 150% of the principal amount of the Bonds at the time outstanding."

Subsequently the respective indentures were prepared and executed by the trustee for bondholders and by the defendant. Not long thereafter, on November 19, 1930, supplemental indentures (so called) were prepared and duly executed by the defendant and the trustee for the bondholders. The bond issues involved on this present application are the 1949 and 1950 issues. The original and supplemental indentures have been filed with the New York Stock Exchange and the Securities and Exchange Commission.

The defendant argues that the proper construction of the original indenture, which unquestionably was intended to carry out the representation expressed in the

president's letter, does not place upon the defendant any obligation to maintain the 150% ratio of collateral which can be enforced in this litigation and that for a failure to maintain the collateral, the original indenture provides only for penalties or restrictions. It may be that the defendant does not in the original indenture, in so many words, covenant to maintain the stated ratio of collateral with the trustee, but when the instrument is read as a whole and construed in the light of the president's letter, it is not unreasonable to conclude that the instrument did create an obligation upon defendant to maintain the stipulated ratio of collateral—an obligation which the trustee may properly seek to enforce in equity. In fact any other construction would be unjust both to the bondholders who invested their money relying on the representation and to those who officially executed the indenture in the honest belief that it was "designed to carry out the intent of the corporation" as expressed in the representation. We are not to assume that they intended to do less than they had promised. They evidently intended to meet the terms of the offering circular.

In the supplemental indenture, approved unanimously by defendant's Board of Directors, there is no question but that there was expressed a definite undertaking on the part of the defendant to maintain the stipulated ratio of collateral. It has been followed and never disaffirmed for over eight years. This the defendant does not deny, but seeks to avoid responsibility under the supplemental indenture on the ground of lack of consideration, and upon the further ground that it was entered into without the consent of 60% of the bondholders and without the consent of defendant's stockholders.

■ In my opinion every bond that was purchased by the public on the original representation in the newspaper advertisement and the offering circular was consideration for this supplemental indenture, which was prepared to eliminate any possibility of a doubt as to the defendant's covenant to maintain the collateral at the 150% ratio and as to the trustees' right to enforce that covenant by seeking a decree in equity. No consent of the bondholders to the execution of the supplemental indenture was necessary, either under the terms of the original indenture or under any rule of law. The supplemental indenture did not affect their rights adversely. Rather it

clarified and stated more definitely, in the interest of the bondholders, an obligation which they had the right to assume from the president's letter would be adequately expressed in the original indenture. The representation made "prior to and in connection with the issue and sale of the bonds" is acknowledged and its consequent obligation is recognized in the supplemental indenture. Nor was it necessary to obtain the consent of defendant's stockholders, if all that the supplemental indenture did was to clarify the provisions of the original indenture and carry out the representation under which the millions realized on the sale of the bonds had found their way into the defendant's coffers and had become part of the assets owned by defendant's stockholders.

■ Upon the present application we do not have to try these lawsuits. It is my opinion, however, that the plaintiffs have established a prima facie case and have shown a probability of success upon the fundamental issue of the case, namely, whether the defendant did covenant to maintain the stipulated 150% ratio of collateral security with the trustee and whether the specific performance of that covenant may be enforced in this action.

■ That the provisions of indentures should receive a reasonable interpretation and that particular provisions thereof should be read in the light of the dominant intent of the parties, has repeatedly been stated. Prudence Co., Inc. v. Central Hanover Bank & Trust Co., 237 App.Div. 595, 600, 262 N.Y.S. 311, affirmed 261 N.Y. 420, 185 N.E. 687; Matter of Central Hanover Bank & Trust Co., 149 Misc. 488, 494, 268 N.Y.S. 572, affirmed 265 N.Y. 30, 191 N.E. 723.

■ Assuming that defendant has covenanted to maintain the collateral at the 150% ratio, there are legal precedents for the enforcement of that covenant by suit for specific performance. Greenleaf v. Blakeman, 40 App.Div. 371, 58 N.Y.S. 76, affirmed Greenleaf v. Schley, 166 N.Y. 627, 60 N.E. 1111; McNamara v. McNamara, 256 App.Div. 370, 10 N.Y.S.2d 94; Hicks v. Turck, 72 Mich. 311, 40 N.W. 339.

It is apparent that a suit for damages for the breach of the covenant to post or maintain collateral security would be inadequate. If a creditor is to have the security position for which he bargained, the promise to maintain the security must be

specifically enforced. Pomeroy, § 2175. Failing specific enforcement, the secured creditor would be relegated to an action for damages and would share his debtor's property with other unsecured creditors. As to assets which were intended for his security he would be on the footing of an unsecured creditor.

The purpose of the present application for a preliminary injunction is to preserve plaintiffs' rights pending a final determination of the issues at the trial. It is obvious, upon a consideration of the defendant's present financial condition, that if the aforementioned fund is dissipated, a final decree ordering specific performance would be an idle ceremony. The refusal of the relief sought by the plaintiff would do the plaintiff irreparable damage.

Next to be considered, is the effect upon the defendant of the issuance of a preliminary injunction. Defendant claims that a preliminary injunction will entail undue hardship and is likely to result in financial difficulties for the defendant to the consequent injury of all concerned, including the bondholders who are represented by the plaintiffs. A preliminary injunction at this stage of this proceeding should not deprive the defendant of all funds, so as to jeopardize its corporate existence and prevent it from rendering certain essential services to the bondholders, as required by the indenture. Any such result would not subserve the ends of justice. The court, in specific performance cases, may attach conditions to the exercise of its equity powers so as not to cause hardship or injustice to either of the parties. Willard v. Tayloe, 8 Wall. 557, 567, 19 L.Ed. 501.

The attorneys for the Marine Midland Bank, one of the plaintiff trustees, suggest that undue hardship to the defendant could be avoided, and the rights of the respective plaintiffs at the same time protected, by the granting of a preliminary injunction which would not be absolute in its terms and would allow the defendant to use sufficient funds to carry on its necessary activities. I agree with this suggestion.

In my opinion a preliminary injunction should be issued restraining the defendant from disposing of the fund of $413,325.39, now on deposit to its credit, until after the determination of this action, but that such injunction should be so limited by its terms as to permit the defendant to withdraw from said funds each month a sum sufficient for its essential services. This fund is the only property presently available to defendant with which to meet its current expenses. The affidavits indicate that it has no debts except its bonds. There is no question present involving the rights of intervening creditors. Irving Trust Co. v. Commercial Factors Corp., 2 Cir., 68 F.2d 864, 868. The defendant has estimated that the cost of its administration expenses for the ensuing year will amount to $111,325.39 or somewhat less than $10,000 a month. Each month then, under the terms of the preliminary injunction, the defendant should be permitted to use the sum of $10,000 to cover the cost of its administration expenses.

Further, the preliminary injunction should contain a provision allowing the defendant to make application to this Court at any time, while the injunction remains in force, for an order amending its terms so as to permit the withdrawal of additional funds upon a showing that such withdrawal is necessary for some essential purpose of the defendant and in the interest of the bondholders. A preliminary injunction, containing the provisions above indicated, will protect the rights of the plaintiff trustees, pending a determination of the issues involved in this suit, and meanwhile it will not work any undue hardship upon the defendant.

Defendant's objection to this form of preliminary injunction on the ground that it would require continuous supervision of defendant by the Court loses its force when it is recalled that the arrangement here indicated will be only temporary. There might be some basis for that argument if this were a final decree. Life Preserver Suit Co. v. National Life Preserver Co., 2 Cir., 252 F. 139, 142. But the preliminary injunction will be in effect only pending the trial of the action.

Rule 65(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, requires that no preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the Court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. Because of the peculiar circumstances of this case and the basis of the rights of the plaintiff trustees and the interests of the bondholders plaintiffs repre-

sent, I fix Five thousand ($5,000) dollars as the amount of the bond to be furnished in each case.

As to the form of the preliminary injunction, I suggest that counsel consult Rule 65(d) of the Federal Rules of Civil Procedure.

Submit orders and bonds in accordance with this opinion; also form of preliminary injunction to be issued by the Clerk under the seal of this Court, pursuant to the orders to be signed herein.