AMERICAN MOTORISTS INSURANCE CO., Plaintiff,

v.

PENNSYLVANIA BEADS CORPORATION, Defendant.

No. 97 CIV. 3353(CLB).

United States District Court, S.D. New York.

Oct. 14, 1997.

David A. Ward, Law Offices of Michael P. O'Connor, Pearl River, NY, for Plaintiff.

Richard J. Margolis, Margolis Edelstein, Philadelphia, PA, for Defendant.

### MEMORANDUM & ORDER

BRIEANT, District Judge.

Presently before this Court for decision is plaintiff's motion for summary judgment pursuant to Fed.R.Civ.P. 56(c) and defendant's petition to stay the proceedings pending resolution of the case defendant has filed against the United States Customs Service in the United States Court of International Trade. On April 14, 1997, plaintiff American Motorists Insurance Company ("AMICO") brought an action against defendant Pennsylvania Beads Corporation ("PB Co.") to recover under an indemnity agreement.

AMICO is incorporated under Illinois law and is licensed to do business as a surety under New York law. PB Co. is incorporated and located in Pennsylvania. PB Co. is engaged in the business of importing "beddies" products into the United States. In order to conduct this business, PB Co. had to guarantee its compliance with the regulatory and statutory requirements of the United States Customs Service, by providing a surety bond on Customs Form 301, the conditions of which are set by regulation. *See* 19 C.F.R. § 113.62 (1997); *see also* 19 U.S.C. § 1623 (1994) (authorizing customs officials to require and regulate surety bonds).

On February 22, 1996 PB Co.'s president, Ramesh Chandriani, executed a bond with PB Co. as principal, AMICO as surety and the United States as obligee. The bond became effective as of March 1, 1996 and the limit of liability is set at $50,000.00. The bond is a continuous bond, "remain[ing] in force for one (1) year beginning with the effective date and for each succeeding annual period, until terminated." The bond also constitutes "a separate bond for each period in the amounts listed below for liabilities [with a limit of $50,000.00] that accrue in each period." *See* Exhibit A to Plaintiff's Complaint.

As a consideration for the agreement to act as PB Co.'s surety on the bond, AMICO and PB Co. had previously executed on February 13, 1996 an Indemnity Agreement. In Paragraph Two, PB Co. undertook and agreed:

To indemnify and save harmless [AMICO] from and against all liability, claim, demand, loss, damage, expense, cost, and attorney's fees which it shall at any time incur by reason of its execution of any bond or its payment of or its liability to pay any claim, and to place [AMICO] in funds to meet all its liability under any bond, promptly upon request and before [AMICO] may be required to make any payment thereunder; and the voucher or other evidence of the payment by [AMICO] of any liability, claim, demand, loss, damage, expense, cost and attorney's fees, shall be prima facie evidence of the fact

and amount of [PB Co.'s] liability to [AMICO] under this agreement. Any demand upon [AMICO] by the [United States] shall be sufficient to conclude that liability exists and [PB Co.] shall then place [AMICO] with sufficient funds as collateral security to cover the liability.

*See* Exhibit B to Plaintiff's Complaint.

It is the collateral security provision of this paragraph which is the subject of the present dispute.

It is undisputed that sometime after the effective date of the bond, plaintiff received a formal demand from the United States Customs Service against the bond executed on behalf of defendant, requesting payment of $225,379.24. *See* Plaintiff's Statement Pursuant to Local Rule 56.1; *see also* Defendant's Statement Pursuant to Local Rule 56.1. Under the terms of the United States Customs Bond, plaintiff's liability to Customs is limited to $50,000.00 for each year in which the bond is in effect. Because the bond has been in effect for two one year periods—from March 1, 1996 to February 28, 1997 and from March 1, 1997 to February 28, 1998—plaintiff is potentially liable to Customs for up to $100,000.00.

Pursuant to the terms of the indemnity agreement, plaintiff demanded that defendant post $100,000.00 as collateral security. After defendant refused to post such collateral security, plaintiff commenced this action. Plaintiff's motion for summary judgment seeks to require defendant to deposit with plaintiff funds in the amount of $100,000.00 as collateral security for its potential liability to Customs, and further requests attorney's fees in the amount of $6,400.00.

Defendant urges this Court to deny plaintiff's motion, arguing that the Indemnity Agreement is ambiguous, that enforcement of the Agreement's collateral security provisions would be contrary to public policy, and finally that the amount plaintiff requests as attorney's fees is unreasonable. According to defendant, the $225,379.24 originally demanded of plaintiff by the Customs Service represents the amount of taxes assessed to defendant as a result of the Customs Service's reclassification of defendant's products as cigarettes, rather than cigars. That re-

classification subjected PB Co.'s products retroactively to a substantially higher tax rate and defendant has contested it before the United States Court of International Trade. *See* Defendant's Memorandum of Law ("Def.Mem.").

### *Discussion*

#### *A. Summary Judgment on Plaintiff's Demand for Collateral Security*

Fed.R.Civ.P. 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. The moving party may discharge this burden by demonstrating that there is an absence of evidence to support the non-moving party's case on an issue which that party would have the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552-53. Once that burden has been established, the burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. As our Court of Appeals has noted, a court should only award summary judgment where "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy,* 988 F.2d 303, 308 (2d Cir.1993).

#### *1. The Indemnity Agreement*

"In a contract dispute, summary judgment will be awarded only where the language of the contract is unambiguous." *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1192 (2d Cir.1996). Contract terms are ambiguous if they are "capable of more than one meaning when viewed objectively by a

reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Nowak,* 81 F.3d. at 1192 (citation omitted). Conversely, "no ambiguity exists when contract language has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference in opinion." *Sayers v. Rochester Tel. Corp. Supplemental Mgt. Pension Plan,* 7 F.3d 1091, 1095 (2d Cir.1993).

■The language of the Indemnity Agreement in this case is both clear and precise. As noted above, Paragraph Two of the Agreement unambiguously requires that "[a]ny demand upon [AMICO] by the [United States] shall be sufficient to conclude that liability exists and [PB Co.] shall then place [AMICO] with sufficient funds as collateral security to cover the liability." Indeed, as our Court of Appeals has held, in construing an identical provision in another case involving AMICO: "we find that this unambiguous sentence gives AMICO a cause of action for collateral security.... By means of this provision, the parties agree that in the event the United States were to make a 'demand' against AMICO, United would be obligated to provide AMICO with collateral security to protect AMICO against the liability threatened by the demand." *American Motorists Ins. Co. v. United Furnace Co., Inc.,* 876 F.2d 293, 299 (2d Cir.1989).

The identical contract language in the instant case remains unambiguous. It provides that in the event that plaintiff receives any demand from the Customs Service against the bond executed on behalf of defendant, defendant is to provide plaintiff with collateral security sufficient to cover plaintiff's potential liability. It is undisputed that plaintiff has received a demand from Customs against the bond executed on behalf of defendant. In addition, defendant concedes that it has failed to place any collateral security with plaintiff. *See* Defendant's Statement Pursuant to Local Rule 56.1. Accordingly, this Court grants plaintiff's summary judgment motion and finds that defendant is liable to plaintiff for collateral security.

■ Having established that defendant is required to deposit collateral security with plaintiff, we now turn to the issue of how much is required. Defendant asserts that there is a genuine issue of material fact as to the amount of collateral security it is obligated to provide under the indemnity agreement. However, under the terms of the United States Customs Bond, plaintiff is liable to Customs for up to $50,000.00 for each year in which the bond is in effect. Because the bond has been in effect for two one year periods—from March 1, 1996 to February 28, 1997 and from March 1, 1997 to February 28, 1998—plaintiff's potential liability to Customs is $100,000.00. Therefore, $100,000.00 is the amount which must be deposited by defendant to provide plaintiff—as the Indemnity Agreement unambiguously requires—"with sufficient funds as collateral security to cover the liability."

### 2. Defendant's Public Policy Argument

■ Although PB Co.'s contractual obligations under the Indemnity Agreement are clear, defendant argues that enforcing the Agreement would be contrary to public policy. According to defendant, the Indemnification Agreement is "unconscionable and void as against public policy" because "it forces Defendant to pay to the bonding company when the amounts they are liable for, if any, are still pending in the appropriate forums." Def. Mem. at 5.

Defendant's characterization of the practical effect of the Indemnity Agreement is entirely accurate. Indeed, the very purpose of the Agreement is to provide plaintiff with collateral security *before* it is required to discharge any potential Customs liability. That purpose is neither unconscionable, nor void as against public policy, and has been enforced consistently by our courts. *See e.g. American Motorists Ins. Co.,* 876 F.2d at 302 (holding that under an identical provision, AMICO was entitled to receive the collateral security it had bargained for); *Northwestern National Insurance Co. of Milwaukee, Wisconsin v. Alberts,* 741 F.Supp. 424, 429 (S.D.N.Y.1990) (enforcing surety's rights to

collateral security for an anticipated liability as provided for by an indemnity agreement); *Safeco Ins. Co. of America v. Schwab,* 739 F.2d 431, 433 (9th Cir.1984) ("Sureties are ordinarily entitled to specific performance of collateral security clauses. 'If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced.'" (quoting *Marine Midland Trust Co. of New York v. Alleghany Corp.,* 28 F.Supp. 680, 683–84 (S.D.N.Y.1939))).

The only remaining support for defendant's public policy argument is its unsubstantiated claim that the financial hardship which would result from enforcement of the Indemnity Agreement would bankrupt PB Co. "needlessly." *Id.* While that possible outcome would indeed be unfortunate, it does not, standing alone, provide a valid justification for denying plaintiff access to the security it specifically bargained for. In fact, absent enforcement of the Indemnity Agreement's collateral security clause, plaintiff could—in the bankruptcy situation contemplated by defendant—be relegated to an unsecured claim and therefore be forced to share its debtor's property with other creditors. If anything, public policy considerations dictate against such a result, since it is that precise situation which AMICO sought to avoid in bargaining for the collateral security clause.

This Court concludes that defendant's policy arguments are unpersuasive and present no barrier to enforcement of the Indemnity Agreement. Accordingly, this Court holds that under the Indemnity Agreement, AMICO is entitled to receive from PB Co. $100,000.00 as collateral security for its potential liability to Customs.

### 3. Defendant's Allusion to "Other Bonds"

As a final matter we address defendant's allusion to the existence of "other bonds" which apparently "must have been involved" in the transactions which led to this action. Def. Mem. at 4–5. According to defendant, the possible existence of these "other bonds" is in itself a genuine issue of material fact requiring trial.

Plaintiff denies that it is a surety with respect to defendant on any other Customs bonds. [Plaintiff's Reply Memorandum of Law at 4]. Although defendant declines to specifically identify any "other bonds," defendant insists that the existence of these bonds is confirmed by the fact that there is a disparity between the face amount of the AMICO bond and the actual amount of duty demanded by Customs. *See id.* According to defendant, "[t]he disparity between the amounts of the bond and the damages demanded [by Customs] indicates that other bonds must have been involved, assuming adequate security was provided as required by Customs regulations." *See id.*

This contention rests on an assumption which is simply wrong. Although the Customs demand for $225,379.24 does exceed the $100,000.00 face amount of the bond, no authority cited by defendant, nor any uncovered by independent research, suggests that a surety is required to anticipate the precise amount of duty the Customs Service will ultimately demand of a principal. It seems that defendant's assertion confuses the amount Customs' regulations require as a bond for *estimated* future duty, and the amount Customs in fact demanded of AMICO for what in the Service's view was *actual* duty owed by defendant. Thus, the fact that a disparity exists between the face amount of the bond and the actual duties demanded by Customs does not in any way support defendant's assertions that some "other bonds must have been involved." Instead, the rather large disparity in this case appears to be a function of the fact that Customs officials reclassified defendant's products as cigarettes, rather than cigars, and therefore subjected those products to a substantially higher tax rate.

In sum, defendant' allusion to the existence of some mysterious "other bonds" does not in itself constitute an issue of material fact requiring trial. As the Supreme Court has stated, to defeat a motion for summary judgment the non-moving party must do "more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

### B. *Plaintiff's Request for Attorney's Fees*

Under the clear language of the Indemnity Agreement, defendant is required to indemnify plaintiff for "any and all ... attorney's fees which it shall incur by reason of its execution of any bond .... or its liability to pay any claim." Defendant readily acknowledges that "the indemnity agreement does allow for attorneys fees," [Def. Mem. at 6], but contests the reasonableness of the plaintiff's request for attorney's fees in the amount of $6,400.00. In particular, defendant complains that plaintiff has failed to itemize or otherwise document the services and costs which make up the requested $6,400.00 fee.

Plaintiff has since provided an itemized list of the attorney hours and other costs incurred on this action. *See* Exhibits 1 and 2 to Plaintiff's Affirmation in Reply and in Opposition. In brief that list contains the following items:

1. A copy of a check in the amount of $188.56 paid to Tomkins & Davidson, plaintiff's counsel.

2. A copy of an invoice from Tompkins & Davidson, billing AMICO $188.56 at a rate of $185.00 per attorney hour, apparently for services rendered in connection with plaintiff's defense against the demands of the Customs Service.

3. A copy of a check in the amount of $3,403.51 paid to Tompkins & Davidson.

4. A copy of an invoice from Tompkins & Davidson, billing AMICO $3,403.51 at an average rate of approximately $213.00 per attorney hour, apparently for services rendered in connection with plaintiff's defense against the demands of the Customs Service.

5. A copy of an invoice from Michael P. O'Connor, Esq., billing AMICO $1,430.22 at an average rate of approximately $177.00 per attorney hour, apparently for services rendered in connection with the prosecution of this claim.

The total of the above itemized attorney's fees and other costs is $5,022.29. The fees appear to have been incurred at arms length and appear reasonable. This Court grants plaintiff's motion for attorney's fees in that amount.

Accordingly, this Court grants plaintiff's motion for summary judgment and awards reasonable attorney's fees in the amount of $5,022.29, making a total judgment of $105,022.29, of which plaintiff shall hold $100,000.00 as security awaiting a final decision of the Court of International Trade. Defendant's motion to stay proceedings pending the resolution of its case before the Court of International Trade is denied.

The Clerk shall file a final judgment.

SO ORDERED.