OHIO CASUALTY INSURANCE CO., Plaintiff,

v.

Peter FRATARCANGELO, Mary Fratarcangelo, and PFRMF Investment Holdings, Inc., Defendants.

**Civil No. 3:13cv195(AWT).**

United States District Court, D. Connecticut.

Signed March 25, 2014.

Matthew M. Horowitz, Wolf Horowitz & Etlinger LLC, Hartford, CT, for Plaintiff.

John P. Thygerson, Law Offices of John P. Thygerson, LLC, Norwalk, CT, Steven Altman, Altman & Company P.C., New York, NY, for Defendants.

## *RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT*

ALVIN W. THOMPSON, District Judge.

This case arises out of a bond written by the plaintiff, Ohio Casualty Insurance Co. ("Ohio Casualty"), at the request of the defendants in order for the defendants to obtain a replacement stock certificate when their original was purportedly lost. Ohio Casualty asserts that it has received notice of a claim on this bond and that it has been unable to procure from the defendants its discharge from liability. Ohio Casualty filed a six count complaint seeking contractual indemnification (Count One), common law reimbursement (Count Two), contractual security (Count Three), common law exoneration (Count Four), quia timet (Count Five), and disclosure of financial information (Count Six). Ohio Casualty has moved for partial summary judgment on Counts Three and Six of the complaint, requesting that the court order specific performance of the contractual terms requiring the defendants to post collateral security and produce requested financial records. For the reasons set forth below, the motion is being granted.

## I. Factual Background

On April 4, 2009, Ohio Casualty issued Bond # 5052967 (the "Bond") at the request of defendant PFRMF Investment Holdings LLC ("PFRMF"). PFRMF requested the Bond so it could obtain a replacement for Stock Certificate Number 0000276357 (the "Certificate"), which represented 173,113 shares of stock in The Interpublic Group of Companies ("IPG"). PFRMF represented to Ohio Casualty that it lawfully owned the Certificate and that the Certificate had been lost. The Bond includes a provision reading:

> THE CONDITIONS OF THIS OBLIGATION ARE SUCH, that if [PFRMF], the heirs, legal representatives, successors or assigns of [PFRMF], or any of them shall in case the mislaid, lost, stolen or destroyed original or originals be found or come into the hands or power of any of them or into the hands, custody or power of any person, deliver or cause the same to be immediately

delivered unto [IPG and the Bank of New York Mellon ("BNY")] in order to be cancelled, and shall at all times indemnify and save harmless [IPG and BNY] from and against any and all claims, actions and suits whether groundless or otherwise, and from and against any and all liabilities, losses, damages, costs, charges, counsel fees and other expenses of every nature and character by reason of the said mislaid, lost, stolen or destroyed original or originals and/or the issuance of a new instrument or instruments in lieu thereof or the making of the payment, transfer, delivery or exchange called for by the original or originals without the surrender thereof, and whether or not based upon or arising out of the honoring or refusing to honor the original or originals when presented by any one or based upon or arising from inadvertence, accident, oversight or neglect on the part of [IPG and BNY] or their respective officers, agents, clerks and employees and/or omission or failure to enquire into, contest or litigate the right of any applicant to receive any payment, credit, transfer, registration, exchange or delivery in respect of the original or the originals and/or the new instrument or instruments issued in lieu thereof, and/or based upon or arising out of any determination which [IPG and BNY] may in fact make as to the merits of any such claim, right or title, and/or based upon or arising out of any other matter or thing whatsoever, then this obligation shall be void; otherwise shall remain in full force and effect.

(Ex. D of Aff. of Peter Fratarcangelo (Doc. No. 32–4) ("Bond Language"), at 1–2.)

Along with the Bond, Ohio Casualty and PFRFM executed a General Agreement of Indemnity (the "GAI"). The individual defendants, Peter Fratarcangelo and Mary Fratarcangelo (together with PFRMF, the "Defendants"), were also signatories on the GAI in their individual capacities. The GAI provides, *inter alia*, that: (i) "[the Defendants] agree to pay to [Ohio Casualty] upon demand ... [a]n amount sufficient to discharge any claim made against [Ohio Casualty] on any Bond. This sum may be used by [Ohio Casualty] to pay such claim or be held by [Ohio Casualty] as collateral security against loss on any Bond"; (ii) Ohio Casualty "shall have the exclusive right for itself and the [defendants] to determine in good faith whether any claim or suit upon the Bond shall ... be paid, compromised, defended or appealed"; (iii) Ohio Casualty "may incur such expenses, including reasonable attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims"; (iv) "[t]he [Defendants] will, on request of [Ohio Casualty], procure the discharge of [Ohio Casualty] from any Bond and all liability by reason thereof"; (v) "[i]f such discharge is unattainable, the [defendants] will, if requested by [Ohio Casualty] either deposit collateral with [Ohio Casualty], acceptable to [Ohio Casualty], sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to [Ohio Casualty] of the funding of the bonded obligation(s)"; and (vi) "[u]ntil [Ohio Casualty] shall have been furnished with competent evidence of its discharge, without loss from any Bonds, [Ohio Casualty] shall have the right to free access at reasonable times to the books, records and accounts of each of the [defendants] for the purpose of examining them." (Aff. Of Robert O'Brien (Doc. No. 16) ("GAI Language"), Ex. 1.)

Having been issued the Bond, the Defendants were able to obtain the replacement for the Certificate (the "Replacement Certificate"), and subsequently entered into a "forward sale" agreement, dated April 15, 2011 (the "Agreement"). The

purpose of the Agreement was to sell the shares represented by the Replacement Certificate to the Bank of New York Mellon ("BNY"). On August 4, 2011, IPG sent a letter to the Defendants and BNY stating that the Replacement Certificate was wrongly issued and that none of the Defendants owned the shares represented by the Replacement Certificate. As a result of the letter, BNY advised the Defendants that they were in default under the Agreement and that it was reserving its right seek damages caused by the default. In response, the Defendants filed a suit against IPG (the "Suit") in the Southern District of New York to determine their rights with respect to the shares represented by the Replacement Certificate. On July 10, 2012, the court ruled that the Defendants had no right to the shares represented by the Replacement Certificate. *See PFRMF Investment Holdings v. Interpublic Group of Companies, Inc.*, No. 11 Civ. 6008(CM), 2012 WL 2849771 (S.D.N.Y. July 10, 2012).

The Defendants appealed the decision, but the case was subsequently settled and the appeal was withdrawn. The settlement agreement, entered into by IPG, the Defendants, and Ohio Casualty, includes a release from liability for costs IPG incurred in litigating the Suit. However, it also provides that "[Ohio Casualty] agrees to indemnify and hold harmless IPG in connection with any claims asserted by BNY or other actions within the scope of the Bond coverage taken by BNY adverse to IPG's interests arising out of or related to the [IPG shares] and/or Replacement Certificate" and that "the Bond remains fully operative for any losses incurred by IPG subsequent to the date of this [a]greement that are owing" because of such claims or actions by BNY. (Ex. 4 of Aff. of

Robert O'Brien (Doc. No. 41), at ¶¶ 4, 10.) Additionally, the settlement agreement includes recitals stating that BNY "has made demand on IPG in connection with the [IPG shares] and the Replacement Certificate", "BNY has made demand on [Ohio Casualty] under the Bond in connection with the [IPG shares] and the Replacement Certificate", and "IPG has made demand against [Ohio Casualty] under the Bond to hold it harmless and indemnify it for any losses incurred as a result of the issuance of the Replacement Certificate." *Id.* at pg. 2.

BNY has notified both IPG and Ohio Casualty that it will seek either the issuance of new IPG shares or recovery for all losses incurred as a result of the Defendants' default under the Agreement and IPG's failure to issue the shares. As of September 20, 2012, BNY informed Ohio Casualty and IPG that it estimated the amount of its losses to be $2,001,562.24.[1] In response to BNY's notification, IPG made a demand on Ohio Casualty under the Bond for all losses it will sustain as a result of BNY's actions. In particular, IPG made a specific partial demand of $97,500, which represented a portion of its fees and costs incurred in litigating the Suit, and advised Ohio Casualty that it anticipated the remainder of such fees and costs to exceed $300,000.

Ohio Casualty contacted the Defendants via letter on October 25, 2011, requesting that they produce certain documents and information relating to the BNY and IPG claims, and via letter on December 22, 2011, requesting that the Defendants procure Ohio Casualty's discharge from liability under the Bond. The Defendants did not respond to either letter. Ohio Casualty once again contacted the Defendants via letter dated October 12, 2012, and demand-

---

1. This estimation has since been updated, and BNY informed Ohio Casualty via email on September 16, 2013 that it was claiming $2,900,000 in losses.

ed that the Defendants: (i) indemnify Ohio Casualty for its costs and fees incurred to that date related to the Bond; (ii) post cash collateral security in the amount of $2,459,062.24 in order to secure it with respect to its expected exposure under the Bond; and (iii) disclose certain financial records and documents to Ohio Casualty. In response, the Defendants provided some of the requested financial information, but have not indemnified Ohio Casualty for its costs and fees or posted collateral security.

Ohio Casualty commenced the instant action seeking specific performance of the terms of the GAI requiring indemnification, the posting of collateral security, and the production of the Defendants' records. It has moved for partial summary judgment on the issues of collateral security and the production of documentation only.

## II. Legal Standard

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994). When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir. 1987). Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it

does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is *both* genuine *and* related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Only those facts that *must* be decided in order to resolve a claim or defense will prevent summary judgment from being granted. Immaterial or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.,* 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (quoting *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990)). However, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Stern v. Trustees of Columbia University,* 131 F.3d 305, 315 (2d Cir.1997) (quoting *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury

could "reasonably find" for the nonmovant. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## III. Discussion

 Because the claims at issue in the instant motion are ones in which Ohio Casualty is requesting that the court order specific performance of contract terms, Ohio Casualty must establish a number of factors in addition to the absence of a genuine issue of material fact. "A motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning." *Topps Co., Inc. v. Cadbury Stani S.A.I.C.,* 526 F.3d 63, 68 (2d Cir.2008). This circuit defines ambiguous language "as that which is ' "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." ' " *Seiden Associates, Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir. 1992) (quoting *Walk–In Medical Centers, Inc. v. Breuer Capital Corp.,* 818 F.2d 260, 263 (2d Cir.1987)). "Conversely, language is not ambiguous when it has ' "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference in opinion." ' " *Id.* (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir.1989)) (alteration in original). Therefore, Ohio Casualty must show that the contract terms on which it bases its motion for summary judgment are unambiguous.

 Furthermore, Ohio Casualty bears the burden of demonstrating that it is entitled to specific performance of those terms. "The test for specific performance.... requires proof that (1) a valid contract exists between the parties, (2) the plaintiff has substantially performed its part of the contract, and (3) plaintiff and defendant are each able to continue performing their parts of the agreement." *Nemer Jeep–Eagle v. Jeep–Eagle Sales Corp.,* 992 F.2d 430, 433 (2d Cir.1993). Additionally, the moving party must "show equitable factors in its favor, for example, the lack of an adequate remedy at law, and must also demonstrate that its risk of injury ... is one that after balancing the equities entitles it to relief. One of the factors balanced is irreparable harm." *Id.* (internal citations omitted).

### A. Collateral Security (Count Three)

#### 1. *Ambiguity in Contract Language*

 The threshold issue is whether the language on which Ohio Casualty relies is sufficiently clear and unambiguous to support a motion for summary judgment. The Defendants do not contend that the language in the GAI is ambiguous with respect to the issue of collateral security. Rather, their primary argument against granting summary judgment on Count Three is that the Bond, and by extension the GAI, does not apply to the facts of this case. In support of this contention, the Defendants point to the language in the Bond that reads "the [Defendants] ... shall in case the mislaid, lost, stolen or destroyed original ... be found or come into the hands or power of any of them or ... any person, deliver or cause the same to be immediately delivered unto [IPG and BNY]...." (Bond Language, at 1.) Because the original has not come into the hands of any person, the Defendants argue, the Bond by its own terms does not apply to the circumstances of this case,

and the collateral security provisions in the GAI cannot be enforced against them.[2]

This position, however, ignores the next clause in the Bond which obligates the Defendants and Ohio Casualty to "at all times indemnify and save harmless [IPG and BNY] from and against any and all claims ... and all liabilities ... by reason of the said ... original or originals *and/or the issuance of a new instrument or instruments in lieu thereof....*" (*Id.* (emphasis added).) The language in the Bond clearly and unambiguously provides that the Defendants and Ohio Casualty are liable for damages to IPG or BNY caused by IPG's issuance of the Replacement Certificate. This is precisely the kind of liability that is being asserted against Ohio Casualty here, and for which Ohio Casualty is seeking collateral security from the Defendants. Therefore, no ambiguity and no issue of material fact exist with respect to the applicability of the Bond and the GAI to the facts of this case.

### 2. *Specific Performance*

Because there is no genuine issue of material fact with respect to the interpretation of the contract language, the court considers whether Ohio Casualty has established that it is entitled to specific performance.

First, it is undisputed that the Bond and the GAI are both valid contracts. While, as discussed above, the Defendants claim that the Bond may not *apply* to the facts here, they make no argument that either the Bond or the GAI are not valid or enforceable against them if it does apply. Similarly, there is no dispute regarding Ohio Casualty's performance under the contract. The Defendants represent that "they appreciate the effort [Ohio Casualty] may be extending offering coverage on the Bond to potential claims that *may* be asserted by BNY (and IPG)...." (Defs.' Mem. Opp. Mot. Prelim. Inj. & Summ. J. (Doc. No. 33) ("Defs.' Mem."), at 17 (emphasis in original).) Finally, there is no indication that either side is unable to perform its obligations under the contract. The Defendants make no argument that they cannot post the requested security, and even if they made such an argument, several courts have upheld collateral security provisions in the face of financial hardship caused to defendants as a result of being required to post collateral security. *See, e.g., Safeco Ins. Co. of America v. Hirani/MES*, 480 Fed.Appx. 606, 608–09 (2d Cir.2012) (affirming a partial grant of summary judgment on collateral security count despite the defendants' "persistent arguments that they lack sufficient assets to provide the contractually required collateral"); *First Nat. Ins. Co. of America v. Sappah Bros.*, 771 F.Supp.2d 569, 575 (E.D.N.C.2011) (granting a motion for preliminary injunction requiring the posting of collateral security even though the defendants contended that if they were "required to post collateral security in an amount in excess of $300,000, ... their construction business may be jeopardized and they may be forced to file bankruptcy").[3] Therefore, Ohio Casualty has estab-

---

**2.** The court notes that there appears to be a factual dispute regarding whether the original certificate has actually been located. (*See* Pl.'s Reply Mem. Supp. Mot. Partial Summ. J. & Prelim. Inj. (Doc. No. 40), at 4 n. 2.) However, as this fact has no bearing on the applicability of the Bond or the GAI, it is immaterial and is not considered in the court's analysis of the motion for summary judgment.

**3.** Indeed, some courts have viewed the defendants' purported lack of financial stability as further evidence that the collateral security *should* be ordered, as it is an indication that the surety may suffer irreparable harm if it is not granted. *See, e.g., Hirani/MES*, 2012 WL 1560668, at *2; *International Fidelity Ins. Co. v. Waterfront Group NC, LLC*, No. 3:11–cv–00116–W, 2011 WL 4715155, at *4 (W.D.N.C.

lished that the first three requirements for granting specific performance have been satisfied, and there is no genuine issue of material fact with respect to those requirements.

 The last requirement Ohio Casualty must satisfy is demonstrating that equity favors granting specific performance. This can be accomplished by showing that it has no adequate remedy at law, and that the harms it will suffer if the court does not grant the motion, including irreparable harm, outweigh the harms that will be caused to the Defendants. Several courts, both in this circuit and in other circuits, have recognized that the "[d]efendants' obligation to provide [the surety] with collateral security is 'subject to enforcement by specific performance [because t]he damage resulting from the failure to give security is not ascertainable, and the legal remedy is therefore inadequate.'" *Hirani/MES*, 2012 WL 1560668, at *1 (quoting *BIB Constr. Co. v. Fireman's Ins. Co.*, 214 A.D.2d 521, 625 N.Y.S.2d 550, 552 (1st Dep't 1995)) (alterations in original). Furthermore, "[s]ureties are ordinarily entitled to specific performance of collateral security clauses [because] '[i]f a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced.'" *Safeco Ins. Co. of America v. Schwab*, 739 F.2d 431, 433 (9th Cir.1984) (quoting *Marine Midland Trust Co. v. Alleghany Corp.*, 28 F.Supp. 680, 683–84 (S.D.N.Y. 1939)). The rationale behind granting specific performance in these situations, when the surety is essentially seeking only money damages, is that the surety has specifically bargained for prejudg-

ment collateralization and "a judgment for money damages alone would deprive the surety of 'prejudgment relief to which it is contractually entitled.'" *Hanover Ins. Group v. Singles Roofing Co., Inc.*, No. 10 C 611, 2012 WL 2368328, at *13 (N.D.Ill. June 21, 2012) (quoting *Travelers Cas. & Sur. Co. v. Ockerlund*, No. 04 C 3963, 2004 WL 1794915, at *5 (N.D.Ill. Aug. 6, 2004)); *see also Kearney Constr. Co., LLC v. Travelers Cas. & Sur. Co. of America*, No. 8:09–cv–1850–T–30TBM, 2010 WL 2803971, at *3 (M.D.Fla. July 15, 2010) ("Travelers is without an adequate remedy at law to the extent that if equitable relief was not granted, it would be forced to continue to use its own funds in defense of the claims against the Indemnitors.")

In addition to lacking an adequate remedy at law, Ohio Casualty would suffer irreparable harm absent summary judgment on the issue of collateral security. "Courts routinely recognize that 'a surety's loss of its right to collateralization cannot be adequately remedied through monetary damages.'" *Sappah Bros.*, 771 F.Supp.2d at 574 (quoting *Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.*, 534 F.Supp.2d 1290, 1321 (S.D.Fl.2008)); *see also Waterfront Group*, 2011 WL 4715155, at *4 (same). As was discussed above with respect to the absence of an adequate remedy at law, "[h]aving bargained for collateral security and having failed to receive it, [Ohio Casualty's] injury is real and immediate" and cannot be remedied after the fact. The true injury to Ohio Casualty is not the monetary loss, but the loss of its bargained-for and contractually-guaranteed position as a secured creditor of the

Oct. 6, 2011) ("Plaintiff has raised sufficient doubt as to whether Defendants would be able to satisfy [any] judgment. The inability to collect on a judgment would destroy Plain-

tiff's right to enforce the contract.... [T]he inability to collect on a monetary judgment can support a finding of irreparable harm.").

Defendants, and this loss cannot be rectified post judgment.

Finally, the balance of harms to the parties also suggests granting summary judgment is appropriate because

> the requested relief would only put the parties in the position for which they originally bargained and would not favor [Ohio Casualty] at [the Defendants'] expense. . . . If the [motion for summary judgment] is denied, however, [Ohio Casualty] will lose the benefit of its bargain and be required to expend its own funds to defend the claims.

*Singles Roofing,* 2012 WL 2368328, at *15; *see also Sappah Bros.,* 771 F.Supp.2d at 575–76; *Waterfront Group,* 2011 WL 4715155, at *5.

Thus, the court finds unpersuasive the Defendants' contention that "[t]here will be absolutely no hardship to the [p]laintiff if the requested injunction is denied because no actual claims are being pursued against it on the Bond." (Defs.' Mem. Opp. Mot. Prelim. Inj. & Summ. J. (Doc. No. 33), at 14.)

Therefore, Ohio Casualty has established that the balance of equities tips in favor of granting specific performance of the collateral security provision of the GAI and there are no genuine issues of material fact with respect to the factors the court must consider in determining whether to grant specific performance. Because Ohio Casualty has also shown that the language of the Bond and the GAI is unambiguous, and the Defendants have not established a genuine issue of material fact regarding the contract terms, the motion for summary judgment is being granted as to Count Three.

### B. Financial Books and Records (Count Six)

#### 1. *Ambiguity in Contract Language*

■ While the Defendants do not explicitly argue that the GAI is ambiguous with respect to the amount of financial documentation the Defendants are required to provide, they essentially make that claim. The Defendants state that while the "provision does entitle the [p]laintiff to access 'at reasonable times to the books, records and accounts of the [Defendants] for the purposes of examining them' " it does not allow Ohio Casualty to access "all documents and information[.]" (Defs.' Mem. at 18.)

However, as discussed above, the Second Circuit defines ambiguous language as being "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Walk–In Medical Centers, Inc. v. Breuer Capital Corp.,* 818 F.2d 260, 263 (2d Cir.1987); *see also Seiden Associates Inc.,* 959 F.2d at 428. The provision addressing the disclosure of financial records reads: "[Ohio Casualty] shall have the right to *free access* at reasonable times to the books, records and accounts of each of the [defendants] for the purpose of examining them." (GAI Language at 1 (emphasis added).) This clause goes on to state that:

> Each one of the [Defendants] hereby authorizes *any* depositories in which funds of any of the [Defendants] may be deposited to furnish to [Ohio Casualty] the amount of such deposits as of *any* date requested, and *any* legal entity doing business with the [Defendants] is authorized to furnish *any* information requested by [Ohio Casualty] concerning *any* transaction.

(*Id.* (emphasis added).) This language is clear and unambiguous. Examining it in

the context of the entire clause, and the entire GAI, a reasonable, objective person could not read this passage as being capable of more than one meaning. While the word "all" is never used in the clause, the phrase "free access" and the repeated use of the word "any" clearly demonstrate the extent to which Ohio Casualty is entitled to request information under the GAI. The only limitation in the clause is that such information may only be requested "at reasonable times." The Defendants do not contend that Ohio Casualty's requests were not made at reasonable times, and Ohio Casualty has demonstrated that the requests were made in the course of attempting to settle the claims asserted by BNY and IPG.

Therefore, Ohio Casualty has established that there is no genuine issue of material fact regarding the contractual language.

### 2. *Specific Performance*

The facts relating to the existence of a valid contract and the plaintiff's performance under the contract are the same for Count Six as for Count Three. Therefore, Ohio Casualty has demonstrated that these two factors are satisfied.

■ As to the third factor, *i.e.* the ability of each party to perform under the contract, the Defendants claim that there are certain documents Ohio Casualty has requested that they are unable to produce because they are not in the Defendants' possession. Specifically, the Defendants state that they "did and do not have copies of th[e] loan documents [underlying a loan from the Royal Bank of Canada] so they could not be produced." (Defs.' Mem. at 21.) However, being unable to comply with a portion of Ohio Casualty's request does not indicate that the Defendants cannot fulfill their obligations under the contract; they would still be able to produce other records and documentation requested by Ohio Casualty that are in their possession, even if some of that information is not.

The Defendants incorrectly state that these are the "*only* documents [p]laintiff previously requested ... that the [D]efendants have not produced...." *Id.* Evidence submitted by the Defendants themselves shows that they "decline[d] ... to provide 'documents evidencing each of the payments referenced in [an] email' ", sent by counsel for Ohio Casualty to counsel for the Defendants, because they felt it was "over-reaching and not a 'fair ask' to the extent it includes payment to counsel." (Ex. E to Aff. of Peter Fratarcangelo (Doc. No. 32–5), at *27.) Additionally, Ohio Casualty correctly states that even if the Defendants do not have the documents underlying the Royal Bank of Canada loan, "their books and records will likely include: account statements, cancelled checks, and/or bookkeeping entries documenting the transfer of $1.3 million to their children's or their children's LLC", along with other documentation related to this transaction. (Pl.'s Reply Mem. Supp. Mot. Summ. J & Prelim. Inj. (Doc. No. 40), at 6 n. 7.) At the least, the terms of the GAI entitle Ohio Casualty to examine the Defendants' records for such information even if primary documentation (like the loan documents themselves) is unavailable.

Therefore, the Defendants have not demonstrated that there is a genuine issue of material fact with respect to their ability to perform under the terms of the GAI. While they have stated that they are unable to provide particular documents (and for the purposes of this motion the court accepts their statement as true), they have not shown that they cannot comply with all future requests by Ohio Casualty to examine their books and records. Thus, Ohio Casualty has shown that the third requirement for specific performance is satisfied.

Similarly, Ohio Casualty has demonstrated that the balance of equities tips in favor of granting specific performance with respect to the books and records clause of the GAI. As with the collateral security provision, since "access to the books and records :.. allow[s] [Ohio Casualty] to protect itself from future liability, there would not be an adequate remedy for [Ohio Casualty] if th[is] ... provision[] w[as] held to be remedied only by subsequent monetary damages, rather than specific performance." *Singles Roofing,* 2012 WL 2368328, at *14. Additionally, while granting summary judgment on Count Six will merely place the parties in the position they have already bound themselves to be contractually, denying summary judgment will prevent Ohio Casualty from realizing the benefit of its bargain. Finally, although the amount of harm Ohio Casualty would suffer from not having access to the requested records may not be easily discernable, the defendants have pointed to no harm that they will suffer if they are forced to comply with Ohio Casualty's document request. Therefore, the balance of equities favors granting summary judgment. *See International Fidelity Ins. Co. v. Vimas Painting Co., Inc.,* No. 2:07–cv–298, 2009 WL 2243769, at *9 (S.D.Ohio Casualty July 23, 2009) ("Defendants do not dispute the fact that the Indemnity Agreement expressly guarantees [the plaintiff] the right to reasonable access to Defendant's books, records, and accounts. Nor do they present any evidence creating a genuine issue of material fact with respect to this issue. Therefore, the Court grants [the plaintiff's] motion for summary

judgment.... Defendants are ordered to provide [the plaintiffs] reasonable access to their books, records, and accounts within 15 days of this order, and shall continue to allow reasonable access until such time as liability against [the plaintiff] under the bonds is terminated"); *cf. Sappah Bros.,* 771 F.Supp.2d. at 575 (denying the plaintiff's motion for a preliminary injunction because it "ha[d] not made a clear showing of irreparable harm if it [was] not allowed to immediately inspect the records", but holding that the plaintiff was still "entitled to inspect defendants' records .... at some later date, such as in the normal course of discovery"). *But see Kearney Constr. Co.,* 2010 WL 2803971, at *4 (denying specific performance of books and records provision because the plaintiff "simply state[d] that '[w]ithout access to the Indemnitors' records and financial information, [the plaintiff] cannot adequately protect its indemnity rights'" and the court concluded "that, at this stage, the posting of the $3.5 million in collateral is sufficient to enforce the collateral obligation of the Indemnitors ...").[4]

Ohio Casualty has demonstrated that there is no genuine issue of material fact with respect to the language of the GAI, or any ambiguity therein, or the requirements that must be satisfied to show that it is entitled to a grant of specific performance. Therefore, the motion for summary judgment is being granted as to Count Six.

## IV. Conclusion

For the reasons set forth above, the Plaintiff's Motion for Partial Summary Judgment to Enforce its Rights to the

---

4. The defendants also contend that summary judgment on Count Six should not be granted because they already "[h]ave [m]ade [s]ubstantial [d]isclosures to the [p]laintiff." (Defs.' Mem. at 18). However, as discussed above, the terms of the GAI are clear and unambiguous with respect to the extent to which Ohio Casualty is entitled to financial information. Although the Defendants may feel that they have already provided enough information to Ohio Casualty, their obligations under the GAI require them to comply with any request by Ohio Casualty that is made at a reasonable time.

Posting of Collateral Security and the Disclosure of Financial Information (Doc. No. 13) is hereby GRANTED. The defendants are ordered to post collateral security with Ohio Casualty in the amount of $2,459,062.24. The defendants are further ordered to fully disclose all of their books, records, credit reports, tax returns and financial account statements (both joint and several), including but not limited to: (i) each defendant's three most recently filed federal tax income returns; (ii) documents evidencing the identity of the parties who received portions of the proceeds from the forward sale transaction and the amount received by each party; and (iii) documents evidencing the consideration supporting each such payment from the proceeds of the forward sale (*i.e.*, if the recipient is alleged to be a creditor of a defendant, documents evidencing the obligation that was owed by the defendant to the recipient of the funds and the then current amount owed).

It is so ordered.